[S. F. No. 2193. In Bank.—August 25, 1903.]

## HUGH EVANS and MATTIE C. EVANS, Appellants, v. W. H. DUKE, Respondent.

VENDOR AND PURCHASER—CONTRACT OF SALE—RESCISSION FOR FRAUD—LACHES.—It is of the essence of the right to rescind a contract for the sale of real estate, on the ground of fraud in its procurement, that prompt notice of the rescission shall be given, and that the action shall be brought within a reasonable time. An attempt to rescind the contract for the first time nearly five years after the making of the agreement, and several years after knowledge by the purchaser that he had been defrauded, shows such laches as will bar equitable relief to enforce a rescission.

ID.—NOTICE OF FRAUD IN ONE MATTER—DUTY OF INVESTIGATION—WAIVER OF ELECTION TO RESCIND.—Upon discovery by the purchaser that he had been defrauded by the vendor as to one material matter, notice was brought home to him that he may have been

defrauded in all other material matters; and it was incumbent upon him to make full investigation. He had but one election to rescind, and must exercise it with reasonable promptness after discovering the fraud; and by conducting himself after such discovery as though the contract were still subsisting he waived all right of election to rescind.

Id.—Action to Foreclose Contract of Sale—Defense of Fraud—Statute of Limitations—Failure of Consideration.—The statute of limitations which applies to an affirmative cause of action to enforce a rescission of a contract of sale, on the ground of fraud, has no application to a defense on the ground of fraud in an action to foreclose the contract of sale. Fraud vitiates all things; and if, by reason of fraud of the plaintiff, there has been a total or partial failure of consideration of the contract sought to be enforced, the defendant is entitled to be relieved from payment to the extent of such failure.

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Joseph H. Skirm, for Appellants.

By the laches and acquiescence of the defendant, all equitable relief for rescission of the contract of sale for the alleged fraud was waived and lost. (*Harrington* v. *Paterson*, 124 Cal. 542; *Archer* v. *Freeman*, 124 Cal. 528; *Marten* v. *Burns Wine Co.*, 99 Cal. 355; *Gamble* v. *Tripp*, 99 Cal. 223; *Williams* v. *Mitchell*, 87 Cal. 532; *Hammond* v. *Wallace*, 85 Cal. 522;[1] *Bailey* v. *Fox*, 78 Cal. 389; *Burke* v. *Levy*, 70 Cal. 250; *Allgood* v. *Bank of Piedmont*, 115 Ala. 418.)

Benjamin K. Knight and Charles M. Cassin, for Respondent.

The findings are sustained by evidence, and are sufficient to support the judgment. (*Freeman* v. *Kieffer*, 101 Cal. 254; *Hart* v. *Church*, 126 Cal. 479;[2] *Dow* v. *Swain*, 125 Cal. 674; *Morris* v. *Courtney*, 120 Cal. 63; *Loaiza* v. *Superior Court*, 85 Cal. 30;[3] *Bank of Woodland* v. *Hiatt*, 58 Cal. 234; *Cruess* v. *Fessler*, 39 Cal. 336; *Hook* v. *Bowman*, 42 Neb. 83;[4] *Griffin* v. *Farrier*, 32 Minn. 199; *Dakota* v. *Taylor*, 5 S. Dak. 106;

[1] 20 Am. St. Rep. 239.          [3] 20 Am. St. Rep. 197.
[2] 77 Am. St. Rep. 195.          [4] 47 Am. St. Rep. 691.

*Henderson* v. *Henshall,* 54 Fed. Rep. 329.)  There is a vast difference between discovery of facts constituting fraud and mere suspicion or opinion of fraud.  (*Marston* v. *Simpson,* 54 Cal. 189.)  The court and jury believed the testimony for the defendant, and their finding should not be disturbed. (*Butler* v. *Collins,* 12 Cal. 464; *Casey* v. *Leggett,* 125 Cal. 670.)  The cause of action for cancellation of the contract was not barred by limitation.  (*Hart* v. *Church,* 126 Cal. 475; [1] *Love* v. *Watkins,* 40 Cal. 547; [2] *California Sav. and Loan Soc.* v. *Culver,* 127 Cal. 110.)  ''Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith. (*Mead* v. *Bunn,* 32 N. Y. 275.  To the same effect are *Eaton* v. *Winnie,* 20 Mich. 156; [3] *McBean* v. *Craddock,* 28 Mo. App. 380, and numerous cases there cited.)''  The rule is the same in *Morris* v. *Courtney,* 120 Cal. 63; *Groppengiesser* v. *Lake,* 103 Cal. 37; *Loaiza* v. *Superior Court,* 85 Cal. 30; [4] *Alvarez* v. *Brannan,* 7 Cal. 503; [5] 2 Pomeroy's Equity Jurisprudence, sec. 878.

HENSHAW, J.—On August 3, 1893, the plaintiffs and defendant entered into a contract, in writing, whereby the plaintiffs agreed to sell, and the defendant to buy, certain real estate and some personal property situated thereon for the sum of $12,555.  Of this sum the defendant paid, upon February 15, 1894, the amount of $6,310, with interest at nine per cent from the date of the contract.  The rest was to be paid in three annual installments, falling due upon the first day of January in each of the years 1895, 1896, and 1897. Defendant having made default in his payments, on February 5, 1898, this action was brought by the plaintiff to recover them, and strict foreclosure was prayed for.  The defendant answered, and at the same time filed his cross-complaint.  In his answer he pleaded that he was entitled to, and had in fact, rescinded the contract upon August 9, 1898,

[1] 77 Am. St. Rep. 195.          [4] 20 Am. St. Rep. 197.
[2] 6 Am. Rep. 624.               [5] 68 Am. Dec. 274.
[3] 4 Am. Rep. 377.

for fraud. By his cross-complaint he pleaded the same matters, and prayed judgment in the sum of $6,910, together with certain other moneys which he had expended, less the rental value of the land. Plaintiffs denied the fraud. Trial was had upon the issues joined under the cross-complaint and answer thereto. A jury was called, and ninety-seven special issues were submitted to it and answered. These, with few exceptions, were adopted by the court, and judgment thereon was given for the defendant, rescinding the contract of purchase. Plaintiffs' motion for a new trial was denied, and they appeal from the judgment and from the order.

The alleged fraudulent representations were, that the land and personal property were of the value of $12,555; that the yearly income from the fruit grown on the land had been for several years not less than three thousand dollars per annum; that not less than sixty acres of the land was under cultivation—forty acres in fruit and twenty in hay; that the apples from the orchard had brought, and would continue to bring, between one dollar and one dollar and a quarter a box; that the grape crop of 1893 would bring a thousand dollars; that the income from the property would amount to at least fifteen per cent upon the purchase price, judging from what it had been in the past; that the reason plaintiffs wished to sell the property was, that Mrs. Evans was an invalid, and it was necessary for them to live nearer the city of Santa Cruz, so that she could receive proper medical attention. It was further alleged that plaintiffs and defendant were intimate friends; that defendant was deaf, and that by reason of his deafness was the more easily victimized.

As against these misrepresentations, it is alleged that the facts were, and were known to plaintiffs to be, that the value of the land and personal property did not exceed $6,910; that the yearly income from the fruit had never exceeded eight hundred dollars; that there never had been more than thirty-five acres of land under cultivation; that the apples had never averaged more than fifty cents per box, and would not average any greater sum; that the grape crop did not bring more than two hundred dollars; that the income from the premises had not paid, and would not pay, more than one per cent per annum on $12,555; that the first year's

income did not net anything, and did not exceed in gross eight hundred dollars. It was further alleged that the representations of plaintiffs were not discovered by defendant to be fraudulent until the month of June, 1898.

Defendant, it is to be remembered, went into immediate possession and occupancy of the land, and, to explain this somewhat startling declaration of the tardiness of his discovery, it is averred that when defendant learned that the first year's income did not net anything he apprised plaintiffs of that fact, and the plaintiff Hugh Evans stated to him that the reason was that he was inexperienced in fruit-raising; that it would take him three or four years to become experienced, and that after he had acquired such experience the income from the property would be as plaintiffs had represented to him; that the annual income from the premises from 1893 to and including the year 1897 did not equal the expenses, but that in each of these years, to defendant's complaint, plaintiffs made the same answer.

We will not here consider the sufficiency of the evidence to support the findings of fraud. The action as tried was for a rescission. The first attempt to rescind was made upon August 9, 1898, nearly five years after the making of the agreement. It is of the essence of the right to rescission that prompt notice shall be given of the demand, and that the action shall be timely brought. Upon obtaining knowledge of the facts entitling him to rescind, plaintiff should commence the proceedings for relief as soon as reasonably possible. "Acquiescence consisting of unnecessary delay after such knowledge will defeat the equitable relief." (2 Pomeroy's Equity Jurisprudence, sec. 817.) "He is not allowed to go on and derive all possible benefits from the transaction and then claim to be relieved from his own obligations by rescission or refusal to perform on his own part. If, after discovering the untruth of the representations, he conducts himself in reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations." (2 Pomeroy's Equity Jurisprudence, sec. 897.) It would seem to be unnecessary to multiply citations upon this principle of law so fundamental and so well settled. It appears from the defendant's

own testimony that all the alleged fraudulent representations other than those in regard to the income of the property sold, and the number of acres in orchard and hay land, were known to him to have been false in the early part of the year 1894. If they were material, he was at once put upon inquiry as to the other representations. (*Ruhl* v. *Mott,* 120 Cal. 668.)    If they were immaterial, they are entitled to no consideration in the case.    Still further, Duke testifies that he first made up his mind that the statements made to him by Evans that the gross yearly income of the premises had not been less than three thousand dollars per annum, and the net income not less than fifteen per cent on $12,555, were false in February, 1896; that in February, 1896, his house was set on fire twice, his harness all cut to pieces, literally destroyed, and that he knew there was only one man who had any interest in burning him out and destroying his property, and he made up his mind who that was, and that he began to search out and find cause why he did it, and that he knew his object was to get rid of him because he never would be able to pay for that place out of the income from it; that the house was fired on the roof twice.    In March, 1896, Duke further testified in a justice court suit that he had been most outrageously swindled by Evans and Matthews in this transaction.    Again he testified that in the fall of 1895, in a conversation with Evans in Matthews's office, Evans told him he would make a success of it by sticking to it, but Duke said he did n't believe he would, and when Evans said, "Well, I have got to look after myself," Duke replied, "In the mean time, while you are looking out for yourself, I will look out for myself."    Moreover, it is difficult to understand how it was possible for the defendant to have been continuously deceived as to the acreage under cultivation.    He lived upon the land for years.    He visited it three or four times before he purchased it.    The map showed the entire area of the cultivated land to be thirty-four and one-half acres.    Notwithstanding the allegations to the contrary in his complaint, it is established by his own testimony that he had been brought up on a farm until he was eighteen years of age, and had worked on farms for some years after he had grown up; that years before he attempted to rescind he knew he had been defrauded; he knew that in essential

particulars the statements of the plaintiffs were false; he even had sworn in a court of law that he had been outrageously swindled in the transaction.

In *Ruhl* v. *Mott,* 120 Cal. 677, it is said: ''When one discovers that he has been put upon and defrauded as to one material matter, notice is at once brought home to him that the man who has been false in one thing may have been false to him in all, and it becomes incumbent upon him to make full investigation. A defrauded party has but one election to rescind, and he must exercise that election with reasonable promptness after discovering the fraud.'' This, unquestionably, the defendant failed to do, and the court's finding that the defendant did not discover the falsity of the representations until the year 1897 or 1898 is without support, and, indeed, is in direct conflict with the testimony of the defendant himself.

It follows, therefore, that defendant was guilty of laches in prosecuting his action for rescission, and that he is not entitled to any relief upon that cause of action; and as this was the only phase of the case determined in the court below, it results that a new trial must be ordered. It does not from this, however, necessarily follow that defendant, if he establishes the fact that he has been defrauded, is not entitled to any relief. It is here determined merely that he is not entitled to the relief of .rescission. As is said in *Hart* v. *Church,* 126 Cal. 471-479[1]: ''It is true that where a party seeks a rescission of a contract he must act with promptness, and that the question as to what is or is not a prompt effort to rescind must depend in each case upon its own peculiar facts. It is also true that where a party seeks relief upon the ground of fraud or mistake, the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake, but a different case is presented where the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself seeking affirmative relief. The three years' statute of limitations does not bar the defendant in such a case from objecting to the validity or to the enforcement of the contract upon the ground

---

[1] 77 Am. St. Rep. 195.

of fraud. It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud. Of course, in such a case he incurs the risk of defeat by the intervention of the rights of innocent parties.''

Fraud vitiates all things, and if by reason of fraud in this case there has been a total or partial failure of consideration, the defendant who, by his conduct, has elected to stand by the contract, would be entitled to be relieved from payment to the extent of his damage by the fraud; that is to say, to the extent of the failure of the consideration.

The judgment and order appealed from are therefore reversed.

Van Dyke, J., Shaw, J., Lorigan, J., and McFarland, J., concurred.

Rehearing denied.

|140   29
◦144  249