[S. F. No. 5000.   Department One.—September 24, 1909.]

In the Matter of the Estate of GEORGE S. McPHEE, Deceased; J. S. CORRIGAN, Administrator, etc., Appellant.

ESTATE OF DECEASED PERSON—OBJECTIONS TO ACCOUNTS OF ADMINISTRATOR—SUFFICIENCY OF FINDINGS OF REFEREE.—Where objections to the account of an administrator are separated into paragraphs, each stating the objection to a single point or feature of the account, a report of the referee appointed to settle and report on the account, which is also divided into paragraphs, each of which

refers to a specified paragraph of the written objections and states the finding with respect thereto and his recommendation concerning it, is sufficient.

ID.—FINDINGS NOT NECESSARY ON SETTLEMENT OF ACCOUNT.—Findings of facts and conclusions of law are not required in a proceeding for the settlement of an administrator's account.

ID.—UNAUTHORIZED ATTEMPT TO CONDUCT BUSINESS—LOSS TO ESTATE—ADMINISTRATOR CHARGED WITH APPRAISED VALUE.—Where the administrator made an unauthorized attempt, resulting in loss to the estate, to carry on business at a store and the making of ties out of timber belonging to the estate, and the evidence is extremely unsatisfactory as to whether his action was justifiable by reason of previous contracts entered into by the deceased, the appellate court will not disturb the decision of the referee charging him with the stock of merchandise and ties on hand at the time of the appraisement at the appraised value.

ID.—USE OF MONEY BY ADMINISTRATOR—COMPOUND INTEREST—DELAY IN SETTLEMENT OF ESTATE.—Where an administrator delays the final settlement of the estate, without cause or excuse, for many years after the year in which it might have been closed, he is properly charged, after the expiration of such year, with compound interest on moneys belonging to the estate converted by him to his own use.

ID.—APPEAL BY ALTERNATIVE METHOD—RECORD—ABSENCE OF EVIDENCE FROM TRANSCRIPT.—On an appeal from an order settling the accounts of the administrator, which was taken and the record prepared in pursuance of the provisions of the act of 1907, providing a new and alternative method for the preparation of records to be used on appeal, it will be presumed that evidentiary matter which was not embodied in the transcript would not affect the soundness of the decision of the trial court.

BRIEFS ON APPEAL—PRINTING PARTS OF RECORD.—Where typewritten transcripts are filed under the new method of preparing records on appeal the law requires the respective parties to print in their briefs such parts of the record as they wish to call to the attention of the court.

APPEAL from an order of the Superior Court of Mendocino County settling the final account of an administrator. Emmet Seawell, Judge presiding.

The facts are stated in the opinion of the court.

Myrick & Deering, Weldon & Held, James W. Scott, and Thomas, Pemberton & Thomas, for Appellant.

Charles E. Wilson, and J. W. Preston, for Respondent.

SHAW, J.—This is an appeal from an order settling the final account of the appellant, J. S. Corrigan, as administrator of the estate of George S. McPhee, deceased.

Alta McPhee, daughter and heir of the deceased, filed written objections to the account. Thereupon the court made an order referring the account and objections to C. M. Mannon, as referee, directing him to examine and state the account, to try the issues raised by the objections and make findings thereon, and to report the same, together with the testimony taken by him. Pursuant to this order, the referee, after hearing the evidence, reported the same, with his statement of the account and his findings upon the issues, to the court. The statement and findings, with certain exceptions not necessary to note, were approved and adopted by the court as its findings, and thereupon the order appealed from was made.

The appellant at considerable length urges the point that the findings of the referee and his conclusions of law were not separately stated. We think the point is without merit. The objections are separated into paragraphs, each stating the objection to a single point or feature of the account. The report of the referee is also divided into paragraphs, each of which refers to a specified paragraph of the written objections and states the finding with respect thereto, with his recommendation concerning it. The recommendation is in each case a conclusion of law and it is distinctly stated and sufficiently separated from the statement of the fact to be clearly intelligible. Furthermore, it has been repeatedly decided that findings of fact and conclusions of law are not required in a proceeding for the settlement of an administrator's account. (*Estate of Levinson,* 108 Cal. 455, [41 Pac. 483, 42 Pac. 479] ; *Estate of Adams,* 131 Cal. 415, [63 Pac. 838] ; *Rochat* v. *Gee,* 137 Cal. 501, [70 Pac. 478] ; *Miller* v. *Lux,* 100 Cal. 613, [35 Pac. 345, 639].) And it is not made to appear that, either in the court below or in the presentation of his appeal, the appellant has been in the least prejudiced by the manner of stating the findings and conclusions of law.

McPhee died on April 21, 1899. Corrigan was appointed administrator of his estate on June 9, 1899. He took charge of the estate and had the appraisement made on July 1, 1899. McPhee owed debts amounting to about three thousand dollars and left an estate worth from twenty-five thousand dollars

CLVI Cal.—22

to thirty thousand dollars, of which over seventeen thousand dollars was personal property, readily convertible into money. The real estate consisted chiefly of a large body of timber land. At the time of his death he was carrying on a country store at Westport and had a large number of men engaged in cutting timber on his land and making it into railroad ties, at a fixed price per tie. One Shelton was also then engaged in making a road for McPhee upon said lands to afford access to the ties. The agreement was that he was to receive $1.50 for each rod of road constructed. The goods in the store were appraised at $4013. There were 24,500 ties on hand, some in the woods and some at Westport, all of which were appraised at $3762.74. The store was in charge of T. H. Smith. After McPhee's death Smith kept the store open, apparently without directions from any one, until Corrigan was appointed. Upon Corrigan's appointment Smith continued the sale of goods at the store as usual, under Corrigan's direction, until October 19, 1899, selling goods during that period to the amount of over one thousand dollars, and buying new goods to the amount of $333.23. It seems that Smith, with Corrigan's consent, also had the men continue cutting timber and making ties upon McPhee's land, and had Shelton continue the construction of the road for a short time. The men thus engaged bought goods at the store and the wages due from their work were settled by a credit upon the accounts for the goods sold to them in the same manner as was the custom before McPhee's death. On October 19th the goods remaining in the store were sold by Corrigan at private sale to Smith and one Bates for $3111, which was $133.80 below the appraisement. Of this price, $1431 was paid in cash and the balance, $1680, was settled by a release from Smith of a claim for that sum made by him against the estate of McPhee. This claim had not been, and never was, presented and allowed as the law required. As a part of this contract of sale, it appears that Smith and Bates were to cut timber upon the McPhee lands and make the same into ties. In pursuance of this arrangement they made ties to the number of 7555. These ties were mingled with those appraised as belonging to the estate, and others bought by Corrigan from third persons, and were shipped to San Francisco and sold by Corrigan at private sale. All this was done without any order or

authority from the court. No order to sell the personal property was ever made, and none of the sales made were ever reported to or confirmed by the court.

The above transactions occurred in the years 1899 and 1900. No account was filed by the administrator until September 24, 1906, at which time the account now under revision was filed. in response to a citation issued at the instance of the heir, Alta McPhee. It purports to show the foregoing transactions as having been done on behalf of the estate and as a part of the administration thereof. The items of receipts and expenses in carrying out the making and sale of the ties and in the conduct of the store are set forth in the account without regard to the inventory or appraisement. All of the items, however, are not given. The wages of the men who were making the ties were settled by the store accounts and in many instances only the balances for or against the administrator are given. These accounts with the men were inextricably confused and neither the administrator nor Smith, who managed the affairs, were able to make a clear explanation thereof. The account is not accompanied by any report or explanation of the transactions to which the items relate.

The referee found that the unauthorized attempt of the administrator to carry on the business at the store and the making of ties out of the timber belonging to the estate entailed a loss to the estate. He accordingly rejected all the items on both sides of the account relating to the making of these ties and the sale thereof and the business thus carried on, including the sale of the ties appraised as well as those subsequently made, and purchased. It was impossible from the account or from the evidence to distinguish the sales of ties belonging to the estate at the death of the deceased from the sales of those made or purchased after his death. The administrator was charged with the stock of merchandise and ties on hand at the time of the appraisement at the appraised value. The referee also found that the administrator had appropriated all the money of the estate received by him, in excess of the debts and expenses, to his own use, and on this account charged him legal interest thereon, with annual rests.

The appellant claims that the men engaged in making the ties and road were working upon contracts for an agreed number of ties and, as to the road, upon a contract to build

a road of a specified length, that these contracts were uncompleted at McPhee's death, that the men had the right to complete the work contracted for and to hold the estate for the contract price, and that for this reason the charges for money paid for work done on these alleged contracts after McPhee's death should have been allowed. There was no satisfactory evidence that the contracts were of this character. The proof was that the men making the ties were to fell the trees and make them into ties at nine and ten cents per tie according to size. There is no evidence that any specific number of ties had been contracted for. The employment was therefore terminable at any time. The employees had no interest in the timber and the employment was ended by the death of . McPhee. (Civ. Code, sec. 1996.) A few trees had been felled before McPhee's death which were not made into ties at that time, but these were all worked up by the men before the administrator took charge, and the ties thus made, only five hundred in all, constituted a part of the 24,500 ties which, on July 1, 1899, were appraised as a part of the property of the estate. There is no evidence to show how much was due the men for the work done after McPhee's death upon these trees. The total amount could not have exceeded fifty dollars. There is no controversy over this trifle, and it appears probable from the evidence that it was paid by credits upon the sales of goods at the store made to the men before the administrator was appointed. These sales amounted to $144.65. The contract for the road was for a stated price per rod. There is no evidence that it was in writing nor of its terms. It was a road made into the timber lands, to be used in getting out the ties. There is no evidence that any specific length was contracted for nor that its construction was continued for any definite distance or time after McPhee's death. It appears to have been substantially completed at that time so far as was necessary to get out the ties then made. The subsequent work thereon, if any, was apparently done to get at the ties made afterwards and without authority. The evidence on this entire subject is extremely vague and unsatisfactory and it would not justify us in disturbing the decision of the referee.

The action of the referee in charging compound interest upon the money of the estate converted by the administrator

to his own use was proper, under the evidence, and the law as declared in the decisions of this court. (*Estate of Stott,* 52 Cal. 406; *Estate of Clark,* 53 Cal. 359; *Estate of Clary,* 112 Cal. 293-295, [44 Pac. 569]; *Glassell* v. *Glassell,* 147 Cal. 513, [82 Pac. 42].) There are many other cases to the same effect.

The widow of the deceased survived him about eight months. There was evidence that in her lifetime, after McPhee's death, she told the administrator to use the money of the estate in his own business. This necessarily was before the time for the settlement of the estate had arrived. The referee did not charge interest until after the expiration of one year from the time of the qualification of the administrator. At that time, in the condition in which the estate was left, it should have been ready for final settlement. Even if we suppose that her consent would have authorized him to use the money, it would not have excused him from paying simple interest during the first year of the administration. As the settlement of the estate was delayed by him, without cause or excuse, for many years after her death, a charge of compound interest against him upon the money thus used was right and just. The evidence was sufficient to raise the inference that the money of the estate in his hands at the end of the first year was, at that time or before, all converted by him to his own use, and that the other moneys of the estate were converted as soon as received. He testified in a somewhat vague way that he frequently had on hand, or could have obtained on demand, as much as one thousand or fifteen hundred dollars. It does not appear, however, that this was money of the estate, or that it had been kept separate from his own funds, or that it was not money he kept on hand for use in his own business. Under these circumstances the charge of compound interest on all the moneys of the estate in his hands was justifiable.

We have considered and discussed all the points made by the appellant in support of his appeal. The appeal was taken and the record prepared in pursuance of the provisions of the act of 1907 providing a new and alternative method for the preparation of records to be used on appeal. (Stats. 1907, p. 750; Code Civ. Proc., secs. 953a, 953b, 953c.) The record presented upon this appeal is deficient in many particulars.

The papers, records, and files of the estate were offered in evidence, including the inventory and appraisement. A number of books kept by McPhee during his lifetime and by Smith as agent after his death were offered in evidence. None of these is produced as a part of the transcript. If the administrator made any report accompanying his final account, it is not given. We have presumed that the matters which would have been disclosed by these omitted portions of the evidence would not affect the soundness of the decision of the referee, and as we have affirmed that decision it is not necessary to go further than this. We wish, however, to call the attention of the appellant to the point that if upon our consideration of the evidence before us, we had been of the opinion that the referee and the court below were in error, it is not improbable that we would have been compelled to affirm the order because of these omissions of evidence from the record. This much we think it proper to say because of the fact that the new method of preparing records on appeal is to some extent untried and many questions concerning it and the proper method of dealing with records when so presented remain uncertain. We have also been at the pains of reading the typewritten transcript filed with the clerk in pursuance of the method authorized by the statute referred to. That statute provides that upon such appeals "the parties must, however, print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court." (Code Civ. Proc., sec. 953c.) If the court had paid no attention to any parts of the record except such portions as the appellant printed in his brief in the present case, it would have been unable to comprehend any of the points in the case and the order appealed from must of necessity have been affirmed upon the ground that no error had been shown.

The order is affirmed.

Angellotti, J., and Sloss, J., concurred.