[Civ. No. 6164. Third Appellate District.—April 18, 1939.]

In the Matter of the Estate of GEORGE P. TRETHEWAY, Deceased. DEAN BERGER et al., Appellants, v. HARRY B. TRETHEWAY, Executor, etc., Respondent.

Chauncey H. Dunn for Appellants.

O. C. Parkinson for Respondent.

PULLEN, P. J.—George P. Tretheway died testate on May 9, 1925, leaving surviving his wife, Mary A. Tretheway, his children, George W. Tretheway, Emma Tretheway Winning, Fred H. Tretheway and Harry B. Tretheway, and five grandchildren, Dean Berger, Arthur Berger, June Berger King, Ernest Berger and Frances Berger, the children of a predeceased daughter, Anna T. Berger, all of whom are over the age of twenty-one years.

The will of George P. Tretheway provided that all of his estate should go in trust to his wife Mary A. Tretheway, and that during her lifetime she should have the entire income from the property. The will provided:

"I further order and direct that in the event that the income from my estate should not be sufficient in the opinion of my wife, Mary A. Tretheway, to properly support and maintain her in the way and manner in which she has been accustomed to live, there shall be paid to her out of the principal of my estate for her support and maintenance such sums as in her discretion may be necessary, the same not to exceed the sum of Two Thousand ($2000.00) Dollars per annum, and I direct that the same be paid to my said wife upon her request and her receipt to be accepted as a full and complete voucher therefor."

It is upon the construction of this paragraph that the principal objections urged by appellants are based.

By the decree of distribution, one-half of the income and one-half of the principal of the estate being community property, was distributed to Mary A. Tretheway, the widow, absolutely. The other one-half of the property and the income was distributed in trust for her support and maintenance during her lifetime as provided in the paragraph quoted above, with the remainder over to her children and grandchildren after her death. The trustees named in the will were George W. Tretheway, a son; Mary A. Tretheway, the widow, and N. Nelson French, an attorney. Mr. French declined the appointment, and distribution was made to the two remaining trustees. George W. Tretheway cooperated for about two years, but thereafter became practically inactive, leaving Mary A. Tretheway as the only active trustee, and she carried on thereafter largely through her son, Harry

B. Tretheway, who conducted most of the business of the trust for her.

Mary A. Tretheway died April 6, 1936, and Fred H. Tretheway and Harry B. Tretheway were appointed executors of her will. In her will she omitted the grandchildren and divided her estate among her children. The result of this distribution was that the trust property passed to the children and the grandchildren, and the separate property of Mary A. Tretheway by the provisions of her will went to her children only.

After the death of Mary A. Tretheway, Harry B. Tretheway, as executor of her estate, filed an account on behalf of Mary A. Tretheway as trustee of the trust. George W. Tretheway, the cotrustee, did not join in that account, nor did Fred H. Tretheway, the coexecutor with Harry B. Tretheway of the estate of Mary A. Tretheway.

■ The trust estate consisted of an undivided one-half interest in certain real and personal property. The accounting of the trust estate as filed by Harry B. Tretheway as executor upon behalf of Mary A. Tretheway, the deceased trustee, showed as having been paid out of the trust fund to Mary A. Tretheway from the principal, the sum of $15,315, which is alleged to have been paid to Mary A. Tretheway under the provisions of the will granting her the income from the trust and an annual amount not to exceed $2,000 from the principal of the trust. The income of the trust property for the years from 1929 to 1935, inclusive, averaged approximately $520 a year, gross.

In these withdrawals Mary A. Tretheway appears to be within her rights. The will provided that if the income from the estate was not sufficient, in the opinion of the widow, to properly support and maintain her, she was to be paid out of the principal of the trust a sum not to exceed $2,000 a year. The income from the trust during its existence amounted to $3,600, and as over eight years elapsed between the decree of distribution and the death of Mary A. Tretheway, a sum in excess of that actually withdrawn from the principal of the trust was permissible.

To this report of the trusteeship the grandchildren filed objections, which were decided contrary to their contentions, and from the order settling the report and account of the trustee, they appeal.

 Appellants claim that the court erred in the first instance in distributing to Mary A. Tretheway one-half of the estate to her, and one-half to the trust, claiming that by the will all of the property should have been set aside in trust. The property of which George P. Tretheway died testate having been community property of himself and wife, clearly there was no error in the court distributing the property as it did. This, however, is a matter not before us, as the decree of distribution making this division has long since become final and is not at this time in issue.

 Appellants also object to various payments by the trustee, claiming that such payments were not supported by vouchers, and that there was no evidence of such payments to the beneficiary. It is true that the records are very meager, and the rendering of such accounts are not to be encouraged, but there is sufficient in the record to warrant approval of the account.

 Mary A. Tretheway was, by the will of her husband, created sole beneficiary as to the income, and practically so as to the principal up to $2,000 a year. The trust clause provided that if the income was not sufficient, *in the opinion of the wife,* to properly support her, she should have out of the principal, such sums *as in her discretion* she might require, to be paid to her *at her request.* When she withdrew these sums no accounting was required from her as to the use of these moneys; they belonged to her absolutely. The actual withdrawal of these funds by her seems to have been quite clearly established. As to the need, she frequently told her children she required additional amounts from the principal, and the amounts as withdrawn from the principal average less than the annual limitation fixed in the will. It does not appear that she was compelled to withdraw in any one year the entire amount of $2,000, but could accumulate the fund if necessary to her support, provided that she did not withdraw from the principal more than $2,000 for each year. The amounts withdrawn balance the cash received, which was less than the total amount she would have withdrawn if she had taken therefrom the full amount allotted to her each year over the eight years the trust was in existence. In other words the actual cash income was something over $15,000 and the will would have justified a withdrawal of $16,000. It must also be remembered that a portion of the

trust estate consisted of farming property which required the expenditure of moneys for taxes, upkeep, etc.

The testimony of a son as to the necessary expenses of Mary A. Tretheway showed that she required approximately $2,700 a year for her personal maintenance, which also approximates the amount actually withdrawn.

In view of the foregoing tangible facts, the strict compliance by the beneficiary as to issuing of formal requests to the trustees for amounts to be withdrawn from the trust, and the giving of receipts to herself as trustee therefor, is not essential in order to approve the account.

An exception is taken to the account by the appellants in that it does not set over to the trust the one-half interest in the Harding Way home. This was a piece of property purchased by Mary A. Tretheway in 1928 or 1929 for her home, where she lived until her death. It appeared from the account that she sold certain stock of the Western States Gas & Electric Company, and realized therefor $6,220, and that one-half thereof was the property of the widow and one-half the property of the trust. Harry B. Tretheway testified he thought the proceeds of that sale, of which one-half belonged to the trust and amounted to $3,110, went into the purchase of the Harding Way property. Nothing to the contrary appears in the record, and we must conclude in the absence of anything to the contrary that the trust has an interest in that property to the extent of $3,110.

Certain notes given by Harry B. Tretheway amounting to $2,783 were distributed in the decree of distribution, one-half to the trust and one-half to the widow. These notes were outlawed prior to the death of Mary A. Tretheway, and appellants now seek to charge the trustees with one-half of these notes. It does not appear, however, the notes were ever collectible during the existence of the trust, or if collectible, that Harry B. Tretheway has yet refused to pay the same. The obligation still exists, and the defense of limitations may not be interposed by the maker even if an action is brought to enforce collection.

Another item in the account is the showing that $750 had been collected from E. B. and Emma Winning, and paid into the trust and paid to the widow as a part of her annual withdrawal. With reference to this item, Harry B. Tretheway testified: ''It was not paid in cash but was thereafter

paid in the form of a ˙gift from Mary A. Tretheway to the Winnings.'' The trustee could not give away the trust property, and if it was not collected in cash, it could not be used by her for her support. This item in the account must be disallowed and should be returned as an asset to the trust.

▪ Appellants also claim that the court should have made findings of fact as to the issues presented by the contest filed to the account, and cite in support thereof *Pendell's Estate,* 216 Cal. 384 [14 Pac. (2d) 506]. That was a case where a petition had been filed to remove an executor and the executor filed an answer, issues were joined and a trial held. In such a case the Supreme Court held that findings were necessary. We do not believe, however, that under the record as here presented findings of fact are required. Section 1230 of the Probate Code now provides in part as follows: ''All issues of fact joined in probate proceedings must be tried in conformity with the requirements of the rules of practice in civil actions . . . If no jury is demanded, the court must try the issues joined, and sign and file its decision in writing, as provided in civil actions.'' This is substantially the same as was formerly found in section 1717 of the Code of Civil Procedure. It was under that section that the *Estate of Pendell, supra,* was decided. *Estate of Ingram,* 99 Cal. App. 660 [279 Pac. 208], was reversed for the reason that the court failed to make findings upon issues framed upon a contest as to the appointment of an administrator. In the *Estate of Levinson,* 108 Cal. 450 [41 Pac. 483, 42 Pac. 479], decided in 1895, findings were held to be unnecessary upon the settlement of an account, and undoubtedly that is still the rule, and has not been changed by any subsequent code amendment.

Appellant claims that an amendment in 1907 to section 1717 changed the ·rule, and the *Estate of Levinson, supra,* is not applicable, but a comparison of the section as it stood originally, and after it was amended, clearly shows that no material change was made as to the requirements of findings. As was said in the *Estate of Levinson, supra*:

''The manner in which the account of an executor or administrator is usually made up, and the manner in which objections thereto are usually presented (and this case is no exception), do not at all conduce to the development of issues such as arise upon the pleadings in a civil action, and

to which findings are required to be responsive. (Code of Civ. Proc., 590, 633.) And it has been said here obiter, but we think correctly, that 'in such a proceeding it is not incumbent upon the court to make and file express findings.' "

In *Estate of Franklin*, 133 Cal. 584 [65 Pac. 1081], the court, considering this question, said: "Exceptions to an account do not create 'issues of fact joined', such as must be submitted through a jury."

In settling an account, the contestant does not join issues of fact but merely raises objections to certain items in the account, which ground does not require him to set forth any allegations of fact. More recent rulings to the same general fact are found in the *Estate of McPhee*, 156 Cal. 335 [104 Pac. 455, Ann. Cas. 1913E, 899], and *Estate of Machado*, 186 Cal. 246 [199 Pac. 505]. The code sections upon which appellants rely, clearly have no application to the settlement of an account, and there is nothing to require the court to file written findings.

Apparently all the evidence before the lower court is here before us, and we can dispose of the matter without returning it for further proceedings in the trial court.

It is therefore the order of this court that the final account be approved with the following exceptions: That $3,110 applied to the purchase of the Harding Way home be credited to the trust, and distributed in accordance with the terms of the trust. In regard to the E. B. and Emma Winning note, that a one-half interest therein be distributed to the trust. Otherwise the account is to be approved as filed, and the judgment entered approving the same is hereby affirmed, except as is modified in the foregoing manner. Each party to bear his own costs. It is so ordered.

Tuttle, J., and Thompson, J., concurred.