[Civ. No. 14155. First Dist., Div. Two. Apr. 27, 1950]

Estate of THEODORE M. STUART, Deceased. GEORGE C. STUART, Appellant, v. ANTOINETTE STUART et al., as Executors, etc., Respondents.

Lloyd S. Ackerman and Philip S. Mathews for Appellant.

Shapro & Rothschild and Raymond T. Anixter for Respondents.

NOURSE, P. J.—This is an appeal from an order settling and allowing an account in the estate of Theodore M. Stuart. The following facts are set forth in an agreed statement filed in lieu of a clerk's transcript: Decedent died January 15, 1946, leaving a will dated September 14, 1945. At the time his will was admitted to probate the American Trust Company and Antoinette Stuart, widow, were appointed as executors. November 12, 1947, the executors filed an inventory and appraisement; the oath of the American Trust Company was to the effect the inventory was a true statement of all the estate of deceased, that of Antoinette Stuart contained the affirmation, "that said annexed Inventory contains real and personal property which Affiant claims as her own property individually and which Affiant asserts is not and should not be considered as a part of the estate of said deceased" which items were marked in the inventory with an asterisk.

On March 22, 1948, the executors served and filed their First Account and Report of Executors and Petition for Confirmation Thereof. April 9, 1948, George C. Stuart, nephew of decedent and appellant herein, filed his exceptions to the account and report in which he alleged that Antoinette and Theodore Stuart made a joint will September 14, 1945 (the will admitted to probate) and that by its terms all property owned by decedent and his wife on September 14, 1945, regardless of title by which it was held became community property, with the exception of jewelry and certain personal effects specifically excluded. Appellant claimed executrix Antoinette Stuart had failed to account for certain community property and other property and income of the estate, and named certain properties and interests in the following exceptions: (1) United States Savings Bonds, (2) certain shares of stock, (3) two insurance policies, (4) proceeds from sale of property in San Mateo (home), (5) interest in the estate of respondent's father which was in the process of being probated at the time the exceptions were filed, (6) property deeded to respondent by her mother. Appellant also objected to certain items of disbursement as not proper charges. The trial court granted exceptions (1) and (2), but found untrue the

contention of appellant that all property owned by decedent and Antoinette Stuart at the time the conjoint will was made regardless of title became community property. It concluded that the assets mentioned in exceptions (3), (4), (5), and (6)—specifically insurance policies, proceeds from the sale of the home, interest in estate of respondent's father and property given to her by her mother—were not community property subject to the will agreement, and made an order in accordance with such findings, overruling exception (7) and settling and allowing the first account and report of executors.

According to the terms of the will upon the death of either one all right, title and interest in all the property should go to the survivor and upon his or her death the remainder should go one half to decedent's nephew, George Stuart, or his children, and one half to designated kin of the wife.

Upon this appeal George Stuart claims that under the specific terms of the will all property must remain in the estate and the trial court was wrong in ruling that property to the value of approximately $70,000 should be excluded from the operation of the will and hence from the assets of the estate. He quotes the following from the will: "We do hereby declare that all property, both real and personal, now owned or hereafter acquired by us jointly, or by either of us severally, or held as joint tenants, and possessed by us or either of us at the time of the death of the first of us, is our community property and as such is disposed of by this Will." Appellant claims that the very essence of that arrangement was that it should be all inclusive in respect to everything owned by either party at the date of the first death, excepting only personal effects; that it is a well established principle in California that husband and wife may agree that any property, by whatever title held by them shall be community property and cites cases to the effect that property held in joint tenancy was found to be community property by agreement of husband and wife; that an insurance policy in legal contemplation is property and as such can by agreement be made part of the community property. Appellant contends that at the time of the making of the mutual will Mrs. Stuart had acquired an interest in the estate of her father which was a property right which could properly be included in the will agreement.

Appellant further argues that the court erred in admitting evidence of the decedent's oral declaration of intention to the effect that decedent did not intend to include in the scope of the will agreement the home held in joint tenancy and the

life insurance policies. He contends that the court also erred in admitting in evidence Mrs. Stuart's will of December 18, 1945, over his objections. Appellant quotes the will, the opening paragraph of which reads: "... At the suggestion of my husband, Theodore M. Stuart, I am making this will disposing of my separate property. He assures me that the items herein mentioned are not included in our conjoint and mutual will of September 14th, 1945, and should be disposed of in a separate will of my own." The will then disposes of the same items which the trial court held were respondent's separate property plus her personal effects. Appellant argues this will constituted a self-serving declaration which is not evidence.

The real and controlling issue raised here is whether the trial court erred in admitting evidence of the circumstances and conversations of the parties relating to the execution of the contract-will. Over objection of appellant Mrs. Stuart testified: "We were going on a long motor trip and he said to me, 'You have some separate property, have you made a will?' I said, 'No.' He said, 'I think you should and you and I should make a conjoint will of our community property.' Then he said to me, 'Your insurance is payable to you and is never controlled by a will, it isn't any part of the estate. Our home is in joint tenancy with the right of survivorship that goes outright to the survivor and isn't part of the estate.' He said, 'If you go first the home is mine and no part of the estate. If I go first it is the same.' I think that is all the discussion we had about it and then he brought home the will the next night and I looked it over and read it. I signed everything he ever gave me all of his life, I knew I could trust him."

Also over objection of appellant Mrs. Collins testified that a few weeks after the September 14th will was executed she consulted the deceased regarding a will for herself, that they read carefully the Stuart will, particularly the portion declaring all their property community, and that she said: " 'Ted, I don't like that; you have said that Tony's—all of the property left from her father's and mother's estate and husband's estate and gifts she has acquired during her lifetime are bound to be disposed of and you have told her to be sure and make out a will.' And then about the life insurance you said that the life insurance was part of the estate and I always understood that life insurance goes to the widow without being a part of the estate and doesn't have to be probated.

You also said the property, the house and lot are held in joint tenancy, but I said to him this paragraph doesn't say that and he said if the house, for instance, in joint tenancy was a part of the community property, it would have to go through legal procedure or redeed it, I have forgotten the term he used. Anyway, legally put it back in as community property other than joint tenancy. He said I would have to make papers out to that effect and also the life insurance would have to be rearranged. That is the same way that your estate is. I said the fact that my husband's home was given to us as a gift from his father, would that make any difference and he said no because it is in joint tenancy and therefore goes to you without having to go through court to be probated, that doesn't have to be probated.''

On October 30, 1945, Mr. and Mrs. Simpson consulted with deceased to have him prepare their will. They testified that deceased showed them his will of September 14th, prepared a will for them of like tenor and assured both that the life insurance policy was not included in the will prepared for them and that it was not included in his own joint will.

The separate will of Mrs. Stuart executed on December 18, 1945, admitted in evidence over appellant's objection, appears unmistakably to have been prepared either by deceased or by some attorney familiar with all these circumstances. This observation is further strengthened by the fact that it followed closely the conferences between deceased and the other witnesses relative to the meaning of the joint will, and his discovery through those conferences that he had made a mistake of law regarding the proper interpretation of his joint will. If this testimony was properly received in evidence the findings and order were fully supported and the order should be affirmed.

Primarily the question arises as to what issues were before the trial court. The hearing was had under section 927 of the Probate Code, which specifies the procedure under which exceptions to the account must be heard. It provides that the filing of the exceptions puts in issue ''all matters'' which ''may be contested.'' Ordinarily when exceptions relate to items of the account alone no issue of fact is raised, at least none which requires findings of facts. (*Estate of Franklin*, 133 Cal. 584 [65 P. 1081]; *Estate of McPhee*, 156 Cal. 335 [104 P. 455, Ann.Cas. 1918E 899]; *Estate of Tretheway*, 32 Cal.App.2d 287 [89 P.2d 679].) But here there was more before the trial court than the settlement of the account. There

was the issue of the proper interpretation of the contract portion of the will. Both parties joined in that issue and, in his opening brief, appellant states as one of six issues involved in this appeal: "What is the intent, purpose and effect of the will-agreement with respect to the exclusion of any other property than that which it expressly enumerates for exclusion?" When the issue was stated the court expressed the view that it was without authority to try it. Counsel for the trust company insisted that the court had authority. Counsel for appellant said nothing. Permission was granted to file briefs on the point. These briefs are not in the file, but we may assume that they satisfied the court. In any event it is no time now to question the power.

In seeking to determine the "intent, purpose and effect" of the contract two defenses immediately became apparent— mutual mistake and fraud. The defense first relied on by respondent was that the contract, as distinguished from the will was the result of the mutual mistake of the parties. The greater part of the testimony recited above relates to that issue. The American Trust Company, as joint executor, petitioned for the settlement of the account. In its petition it prayed for "a determination of the ownership" of the property claimed by the widow. The appellant in his exceptions set up the same claim that these assets should be held to be a part of the estate. The parties were in accord throughout the hearing, at the opening of which counsel for the trust company stated: "the matter, in addition, comes before the Court as to what property is properly includable in the estate under the terms of the mutual and conjoint will."

Thus all parties, by joint agreement, put in issue the question of ownership of the disputed properties and the hearing before the trial court was heard on that issue. There the respondent took the position that these properties were included in the contract by mutual mistake. The appellant took the position that extrinsic evidence was not admissible for that purpose.

Apparent consent is not free when obtained through mistake or fraud. (Civ. Code, § 1567.) A mistake of law may be mutual or it may be a misapprehension by one party of which the other is aware. (Civ. Code, § 1578.) In either case the injured party may avoid the contract by rescission or defend it against its enforcement. (6 Cal.Jur. pp. 78 et seq.) That extrinsic evidence to prove the mistake is admissible is not

questioned since that is the only manner in which such proof can be made.

On this point we are agreed. But there is another ground which I believe compels an affirmance of the order and that is that in so far as the contract-will is a contract it was a fraud upon the wife under the presumption found in section 2235 of the Civil Code. The conceded facts are that all the property acquired and held by the husband was community property (except one lot in the State of Colorado). All the property standing in the name of the wife was her separate property. In the absence of a will all the community interest of the deceased husband would have gone to the surviving wife (Prob. Code, § 201). On the death of the wife intestate one half of her separate property would have gone to the husband, the other half would go to the deceased wife's collateral heirs (Prob. Code, § 223). Hence when the husband, a practicing attorney, persuaded the wife to enter into the will-contract under which, if she predeceased him, he would take all her separate property and all her community share he obtained an advantage over her which is presumed to have been ''without sufficient consideration, and under undue influence.'' (Civ. Code, § 2235.)

This principle was first announced in *McKay* v. *McKay*, 184 Cal. 742, 746 [195 P. 385], where the Supreme Court held that ''transactions between husband and wife are covered and controlled by the rule applicable to transactions between trustees and beneficiaries,'' and that when such conditions are shown the burden is upon the husband ''or his heirs'' to show that the transaction was free from fraud. The McKay case is cited with some reservation since one of the members of this court was the counsel who lost the case on appeal and another member was the trial judge who was reversed. But though the rule seemed new at that time it has been uniformly followed, and with emphasis on the burden of proof cast on the husband, as will appear from *Estate of Cover*, 188 Cal. 133, 143 [204 P. 583], where the court said: ''Confidential relations are presumed to exist between husband and wife, and, in his dealings with his wife, the husband, if he obtains an advantage over her, must stand unimpeached of any abuse of the confidence presumptively reposed in him by the wife and resulting from the marital relation, and, failing in this, he must bear the burden of showing that the transaction was fair and just and fully understood by the party from whom the advantage was obtained. (*Bacon* v. *Soule, supra* [19 Cal.App.

428 (126 P. 384)]; Smith on Fraud, sec. 190; *Robins* v. *Hope, supra* [57 Cal. 493]; *Brison* v. *Brison,* 75 Cal. 525 [7 Am.St. Rep. 189, 17 P. 689]; *Jackson* v. *Jackson,* 94 Cal. 446 [29 P. 957]; *Dimond* v. *Sanderson,* 103 Cal. 97 [37 P. 189].) It is the rule in this state that transactions between husband and wife shall be subjected to the general rule which controls the actions of persons occupying confidential relations with each other, as provided in section 2235 of the Civil Code (Civ. Code, sec. 158), which, when applied to the relation of husband and wife, has been interpreted to mean that 'in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts upon that party the burden of proving affirmatively its compliance with equitable requisites and of thereby overcoming the presumption.' (*Odell* v. *Moss,* 130 Cal. 352 [62 P. 555]; *White* v. *Warren,* 120 Cal. 322. [49 P. 129, 52 P. 723]; *Brison* v. *Brison,* 75 Cal. 525 [7 Am.St. Rep. 189, 17 P. 689]; 2 Pomeroy's Equity Jurisprudence, secs. 955, 956, et seq.; *Diamond* v. *Sanderson,* 103 Cal. 97 [37 P. 189].)'' Later cases of the same import are: *Norris* v. *Norris,* 50 Cal.App.2d 726, 733 [123 P.2d 847]; *Matassa* v. *Matassa,* 87 Cal.App.2d 206, 215 [196 P.2d 599]; *Locke-Paddon* v. *Locke-Paddon,* 194 Cal. 73, 80 [227 P. 715].

The executor American Trust Company and the objector-appellant joined in the contest of the account on the express issue that the property claimed by the widow was community property by reason of the contract, and all parties conceded that at the time of the making of the will those items were the separate property of the widow. There was no contest of the will. All parties agreed that the will was a valid disposal of all the ''community'' property. The only controversy was whether the *contract* transmuted the widow's separate property into the community. The advantage gained by the husband over the wife because of that contract was never disputed. Thereupon the code presumption immediately came into play as evidence of the fraud. That such a presumption is evidence is no longer disputed in this state. (10 Cal.Jur. 744.) In *Stafford* v. *Martinoni,* 192 Cal. 724, 738 [221 P. 919], the Supreme Court said: ''The disputable presumption raised by section 164 of the Civil Code is a form of evidence under the express terms of section 1957 of the Code of Civil Procedure. It may be controverted by other evidence, direct or indirect, but unless

so controverted the court or jury is bound to find according to the presumption. (Code Civ. Proc., §§ 1961-2061.) It is, therefore, for the court or jury to determine whether or not the evidence against the presumption is sufficient to overthrow it. (*People* v. *Milner*, 122 Cal. 171-179 [54 P. 833]; *Moore* v. *Gould*, 151 Cal. 723-726 [91 P. 616]; *Hitchcock* v. *Rooney*, 171 Cal. 285-289 [152 P. 913].)'' And see *Fish* v. *Security-First Nat. Bank*, 31 Cal.2d 378, 384 [189 P.2d 10].

Insofar as the matter of pleading is concerned it is not sufficient to argue that the widow did not affirmatively plead the fraud in the contract. That question was fully discussed in *Estate of Cover* (*supra*) which was a proceeding for revocation of letters of administration previously issued to the widow. She defended on the ground that a prior contract with her husband purporting to waive her right to letters was void under section 2235 of the Civil Code. In defending her right to so attack the agreement the Supreme Court said: (188 Cal. 133, 140) ''In such a case, neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court *seeking to enforce the agreement,* the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud. (*Cox* v. *Schnerr,* 172 Cal. 371 [156 P. 509]; *Hart* v. *Church,* 126 Cal. 471 [77 Am.St.Rep. 195, 58 P. 910, 59 P. 296]; *Evans* v. *Duke,* 140 Cal. 22 [73 P. 732]; *McColgan* v. *Muirland,* 2 Cal.App. 6 [82 P. 1113]; *Secret Valley Land Co.* v. *Perry,* 187 Cal. 420 [202 P. 449]; *Robinson* v. *Glass,* 94 Ind. 211; *Butler* v. *Carpenter,* 163 Mo. 597 [63 S.W. 823]; *State* v. *Tanner,* 45 Wash. 348, 356 [88 P. 321].)'' (Emphasis ours.)

The application of these rules to the present controversy is clear. The widow-executrix filed an account omitting certain properties which she claimed were not included in the will. The appellant as legatee under the will filed exceptions to the account putting in issue the terms of the will-contract. Under section 927 of the Probate Code, which specifies the procedure under which such exceptions may be filed and heard, this is all the *pleading* that is necessary to put in issue ''all matters'' which ''may be contested.'' The only matter then put in issue and contested was whether the specified items of property which were concededly the separate property of the widow

at the time of the will were included in the will by reason of the contract waiver. When the will-contract thus came before the court for interpretation the first evidence facing the court was the presumption found in section 2235 of the Civil Code and the burden of proof was then cast upon the devisee to show that the contract part of the will—the portion which purported to transmute the separate estate of the widow into community property was fair and was executed after a full disclosure by the deceased husband. This he failed to do, relying wholly upon the written terms of the document.

His failure to assume the burden did not, however, foreclose the wife in taking it up, in part only, by showing that, though a full disclosure had not been made by deceased, he assured her as her legal advisor at the time that certain specified separate properties were not included. At this time it would be well to quote again the first paragraph of the contract-will which reads: "We do hereby declare that all property, both real and personal, now owned or hereafter acquired by us jointly, or by either of us severally, or held as joint tenants, and possessed by us or either of us at the time of the death of the first of us, is our community property and as such is disposed of by this Will." It will be noted that the words "separate property" do not appear at any place in the document. This was a term with which the deceased, an able and successful lawyer, was thoroughly familiar. The widow was a trusting wife who "signed everything he gave me all of his life."

But, since the burden of proof was on appellant to show that the contract "was fair and just and fully understood by the party from whom the advantage was obtained" (*Estate of Cover, supra,*) the application of the presumption opened the door as well to respondent to show that such disclosure was not made and that the contract was fraudulent (Code Civ. Proc., § 1856; 10 Cal.Jur. p. 937; *Zirbes* v. *Mounsey,* 176 Cal. 677 [169 P. 368]; *Martin* v. *Sugarman,* 218 Cal. 17 [21 P.2d 428]; *Fernald* v. *Lawsten,* 26 Cal.App.2d 552 [79 P.2d 742]) and this section of the code expressly declares that its provisions are applicable to wills as well as to contracts between parties.

Here we find no evidence of any kind tending to show that, before the contract-will was executed, the deceased fairly disclosed to respondent that she thereby waived her right to the proceeds of the life insurance policies, to her joint tenancy in the family home, or to her right of inheritance in the estate

of her father. All her testimony showing that those matters were not explained to her became admissible. And all that testimony which showed that deceased assured her that they were not included was beyond the limitations of the parol evidence rule on which appellant relies.

Finally, appellant relies upon the conclusive presumption found in subdivision 3 of section 1962 of the Code of Civil Procedure prohibiting one from denying an act which he has "intentionally and deliberately led another to believe." But there is not a particle of evidence justifying the application of the presumption. The deceased was a lawyer of many years of experience. His wife relied entirely on his advice in legal matters.· The will was prepared by deceased and he instructed the wife to sign. There was no representation made by her which would make this presumption applicable.

Order affirmed with costs assessed to appellant.

GOODELL, J., and DOOLING, J.—We concur in the affirmance of the order but not in the sweeping conclusion, which is unnecessary to the decision in this case, that a mutual will by which a wife agrees to subject her separate property to its dispositive provisions goes into the probate court burdened with a presumption that the husband has overreached the wife. Nor is it necessary to find that there was any fraud practiced by the decedent.

There is ample evidence, as pointed out in the main opinion, from which the probate court could properly conclude that the decedent and his wife were laboring under the mutual mistake that the property excluded by the probate court's order was not included in the terms of the contract made a part of the mutual will.

The document is both a contract and a will. Insofar as it purports to subject certain property to testamentary disposition which the husband could not otherwise dispose of by will it is a contract. In its dispositive provisions it is a will. The contract portion of the document is subject to the rules of mutual mistake applicable to contracts generally. The evidence produced by the wife is sufficient to support the probate court's conclusion that certain property of the wife was by mutual mistake of the parties included in the language of the will in the belief of both parties that the language used did not cover it. This is sufficient to entitle the wife to relief on the ground of mutual mistake. (*Stafford* v. *California C. P. Growers,* 11 Cal.2d 212 [78 P.2d 1150].) We need go no further to affirm the order.