[Civ. No. 18560.   First Dist., Div. One.   Nov. 25, 1959.]

IVA LEE ROSE, Appellant, v. MELVILLE J. ROSE, Respondent.

Otis Babcock for Appellant.

Stark & Champlin, Harry Gross, John F. Wells and Franklin C. Stark for Respondent.

BRAY, P. J.—Plaintiff and cross-defendant Iva Lee Rose appeals from those portions of a judgment granting her a decree of divorce relating to the approval of a property settlement agreement and denying her support, and the award to her of only $50 attorney's fees.

QUESTION PRESENTED

Sufficiency of evidence.

RECORD

In her complaint, filed in 1957, plaintiff sought a divorce on grounds of extreme cruelty, alleged the existence of community property believed to be valued in excess of $50,000, and asked that it be awarded to her. Defendant cross-complained for a divorce on cruelty grounds and set up a property settlement agreement executed in 1948 as dispositive of all community property rights. Plaintiff answered, alleging several defenses. The court found against these defenses (they will hereafter be discussed) and held that by reason of the agreement, which it approved, there was no community property, and denied plaintiff's prayer for support.*

---

*The court granted plaintiff custody of the minor child and $150 per month support for such child.

### Property Settlement Agreement

Plaintiff attacked the agreement on several grounds, contending that the agreement was not fair and equitable, that the husband concealed community assets at the time of making the agreement, that thereafter there was a reconciliation of the parties, and an intention to abrogate the agreement, and that the consideration for the agreement failed. Plaintiff devotes herself mainly to rearguing the evidence presented to the trial court and the credibility of the witnesses. On the issues raised there was at best a sharp conflict in the evidence, and under the well known rule this court is bound by the trial court's resolving of that conflict. The evidence consists mainly of the testimony of the parties, defendant's present accountant and a former bookkeeper, and the attorney who represented plaintiff in the negotiations for the agreement. Additionally a host of records of defendant's finances were introduced.

Married in 1930, the parties separated about October 15, 1947. Plaintiff testified that difficulties attributable to defendant arose in the early 1940's but the precipitating cause of the separation appeared to be plaintiff's insisting on adopting a baby, Susan, to which action defendant objected. The couple were childless. Plaintiff had an opportunity to obtain Susan for adoption. When she brought the child into the house, defendant left. Since that time the parties have never lived together as husband and wife. In November, 1947, plaintiff filed for divorce. In December, defendant stipulated to an order for fees and support pendente lite. Negotiations between the parties and their attorneys followed culminating in the agreement of September 10, 1948.

This agreement provided that defendant pay plaintiff $8,000 (payable $3,000 at once, $5,000 in 42 months) and 42 monthly payments of $150 each. As security defendant was to assign $5,000 of life insurance to plaintiff and to pay the premiums thereon. Plaintiff received the household furniture and effects. She waived all right to support and attorney's fees. Further acquisitions by the parties were to constitute separate property of the one acquiring such property. Defendant testified that he fully performed in relation to the insurance and the $150 monthly payments, that plaintiff accepted an automobile and $1,900 in bonds in lieu of the $3,000 payment, and that the $5,000 was by agreement paid in installments. Plaintiff admitted receiving the substituted items but denied any oral agreements.

After the divorce action was filed the attorneys for both

parties informed plaintiff that the adoption would probably not be approved if she went through with the divorce. After the property settlement agreement was executed, defendant joined in the adoption petition, and the divorce action was dismissed.

Much of the trial was taken up with an examination of defendant's financial business both before and after the execution of the agreement, including the details of defendant's finances since its execution. The latter were important only in determining whether defendant at the time of the execution of the agreement had fully disclosed his assets. The evidence showed that defendant then did fully disclose his financial condition, and that his present financial condition is based upon income from and sales of businesses financed principally by an inheritance from his sister's estate and loans made to him. A plaintiff's witness testified to seeing defendant either buying or selling bonds at a bank's bond window. The testimony was rather indefinite. At most plaintiff's evidence created merely a conflict. The burden of proving the fairness of a property settlement agreement, including a full and fair disclosure of the community assets, is on the husband. (*Matassa* v. *Matassa* (1948), 87 Cal.App.2d 206 [196 P.2d 599].) Defendant met this burden. The negotiations for the agreement extended over a considerable period of time, and both parties had the independent advice of counsel during all that time.

As said in the Matassa case, *supra,* at page 214, quoting from *Adams* v. *Adams,* 29 Cal.2d 621, 624 [177 P.2d 265] : " 'Property settlement agreements occupy a favored position in the law of this state and are sanctioned by the Civil Code. [Citations.] Such agreements are usually made with the advice of counsel after careful negotiations, and the courts, in accord with legislative sanction, prefer agreement rather than litigation. [Citation.] When the parties have finally agreed upon the division of their property, the courts are loath to disturb their agreement except for equitable considerations. A property settlement agreement, therefore, that is not tainted by fraud or compulsion or is not in violation of the confidential relationship of the parties is valid and binding on the court. [Citations.]' "

During all the negotiations and ever since the parties have lived separate and apart from one another and dealt at arm's length. The first divorce action was dismissed not for a reconciliation but so the child could be adopted by plaintiff. Defendant joined in the adoption not because he favored it, but to enable plaintiff to have the child. The following lan-

guage from *Collins* v. *Collins*, 48 Cal.2d 325, 330 [309 P.2d 420], is applicable here: ''Here the parties were dealing with one another at arm's length—or at least the husband gave the wife every opportunity to deal at arm's length—when the settlement agreement was negotiated. The wife had independent advice.'' In that case ''The fact that it appears that she [the wife] was eager to secure a Nevada divorce and that therefore she did not obtain, or have her counsel obtain, a complete listing of the properties of the parties is not chargeable to the husband.'' (Pp. 330-331.) Yet the court approved the property settlement agreement. In our case, while plaintiff was eager to get defendant's consent to the adoption, there is no evidence that she or her counsel did not learn of all the property of the parties. Thus our case is a stronger one for approval of the property settlement agreement than was the situation in the Collins case.

While the parties represented in the petition for adoption, and the court found in the order of adoption, that they were living together as man and wife, the evidence of both parties proves that they were not then living together nor have they lived together since. Plaintiff cites no case to support her contention that by this adoption a family relationship between her and defendant was created. Neither the adoption nor the fact that for 10 years defendant, living separate and apart from her and the child, has paid for its support, constitutes under the facts of this case a reconciliation. The agreement was executed in 1948 and plaintiff made no attempt to rescind or set it aside and has accepted its benefits. It is true that the terms of the payments were changed, although not the ultimate amounts; also that a home was purchased jointly by the parties and its title taken in their joint names, and on its sale the equity of the parties went into another home in the plaintiff's married name. As the parties were not divorced there is nothing significant in the use of plaintiff's married name. The title to the house was taken in both names in order to secure financing. Under all the facts of the case, these facts do not compel a finding that the parties abrogated the agreement. Whether a property settlement agreement has been abrogated by the parties is a question of fact. (*Morgan* v. *Morgan* (1951), 106 Cal.App.2d 189, 192 [234 P.2d 782].)

Plaintiff insists that she was forced to sign the agreement in order to be able to adopt the baby. The attorney who represented her at the time denied this. His credibility and

that of the defendant was for the court to determine. The attorney testified that she was told that in effect she could not have the divorce and the baby, not that she must choose between not signing the agreement and getting the baby.

Plaintiff contends that there was a failure of consideration in that the $5,000 to be paid in a lump sum within 42 months was not paid. The court obviously believed defendant's testimony that plaintiff by agreement accepted its payment in installments of $150 per month. Plaintiff admits receiving these installments but denies the agreement. We are bound by the fact that the trial court in this conflict believed defendant. Therefore, there was no failure of consideration.

Plaintiff contends that the court erred in refusing her permanent alimony and more than half of the community property. In the agreement, which the court approved, plaintiff waived all claim to alimony and agreed that all property thereafter to be acquired by the parties should be separate property. The court could not approve the agreement and also grant permanent alimony. (*Adams* v. *Adams, supra,* 29 Cal.2d 621, 627.) Under the agreement there was no community property for the court to award.

The order denying plaintiff's application for support, attorney's fees and costs pendente lite was directly appealable. Plaintiff did not appeal. It cannot be reviewed upon appeal from the interlocutory decree. (*Phillips* v. *Phillips* (1953), 41 Cal.2d 869, 878 [264 P.2d 926] ; *Lincoln* v. *Superior Court* (1943), 22 Cal.2d 304, 310 [139 P.2d 13].)

Plaintiff complains of the award of only $50 attorney's fees. In the agreement she waived the right to attorney's fees. Under this award she receives more than that to which she is legally entitled.

Judgment and decree affirmed.

Tobriner, J., and Foley, J. pro tem.,* concurred.

A petition for a rehearing was denied December 23, 1959, and appellant's petition for a hearing by the Supreme Court was denied January 20, 1960.

---

*Assigned by Chairman of Judicial Council.