[Civ. No. 494.    Fifth Dist.    Nov. 24, 1965.]

HILMA RENEE MITCHELL et al., Plaintiffs and Appellants, v. ANNIE MARKLUND et al., Defendants and Respondents.

Annette La Rue for Plaintiffs and Appellants.

William M. Miles and Miles & Sears for Defendants and Respondents.

BROWN (R.M.), J.—This appeal originated in an action brought by the plaintiffs-appellants against the defendants-respondents seeking to obtain a prohibitory injunction and to impose a constructive trust upon real and personal property and to enforce a provision of a property settlement agreement between their parents. Plaintiffs appeal from an adverse judgment.

Plaintiffs are the adult daughter and adult son of a John A. Marklund, now deceased, and Soleria Renee Marklund. Soleria was alive at the time of trial. The defendant Annie Marklund is the second wife of John. The defendant Thomas W. Chidlaw is a court-appointed referee in a partition action brought by John against Soleria during the former's life, and still holds or controls funds which are affected by this action. He is a mere stakeholder as to this action.

On June 23, 1958, John and Soleria executed a property settlement agreement in connection with a divorce proceeding. The paragraph giving rise to the controversy here involved provides: "That both parties desire that all of the property of which they die possessed go equally to their two children, Charles A. Marklund of Madera and Hilma Mitchell of Fresno, California or if either child predeceases either or both of their parents that the share of said child should go to the children of the said deceased child. That in order to effect this disposition of their property, the parties hereto agree to execute wills including such provisions and that said wills when executed shall be irrevocable."

On July 15, 1958, an interlocutory decree of divorce was granted to Soleria. The decree adopted, confirmed and approved the property settlement agreement, a fully executed copy of which was physically incorporated therein. The court

specifically retained jurisdiction to entertain a partition action upon good cause being shown in connection with certain real property owned by John and Soleria, referred to hereinafter as the ranch property. A final decree of divorce was subsequently entered. No appeal was taken from either decree.

John married Annie Marklund on November 21, 1959. He placed certain real property in joint tenancy in his name and the name of Annie. He successfully initiated an action seeking partition of the ranch, which was sold by the defendant Chidlaw, acting under appointment of the court. On April 6, 1961, John assigned to Annie his interest in the proceeds of the sale of the ranch. On April 6, 1961, he made and executed a will naming Annie as sole beneficiary and specifically disinheriting the plaintiffs herein. John died on June 13, 1961. His estate was administered and the assets distributed to Annie.

The plaintiffs commenced this action seeking to impose a trust upon all property, real and personal, which Annie received from John, either by *inter vivos* transfers or by testamentary gift, and seeking an injunction prohibiting the defendant Chidlaw from paying over to Annie and prohibiting Annie from receiving from Chidlaw, any further moneys derived from the sale of the ranch. The complaint was predicated upon the promise of John to execute an irrevocable will in favor of these plaintiffs contained in the property settlement agreement and embodied in the divorce decrees. Plaintiffs tried their case with the agreement as the basis of their right to recover.

The theory of the defense was that the agreement was rescinded, revoked, or abandoned during the lifetime of John A. Marklund; that there was a material failure of consideration for the agreement of John, and that it would be inequitable to decree quasi-specific enforcement of John's promise to make a will in favor of the plaintiffs.

At the nonjury trial of the action, the defendants established that on July 30, 1959, Soleria made and executed a formal will naming as beneficiaries her several grandchildren, her son, her daughter, and the Trinity Lutheran Church. A special bequest in favor of her son was made conditional. The residuary clause provides that one-half of the residue should go to her son and one-half to her daughter, with a gift over to her son-in-law if her daughter predeceased her. It was also established by irrefutable evidence that, prior to the death of

John, Soleria received a sum in excess of $33,000 from the proceeds of the sale of the ranch and deposited the same in account No. 19749, with Guarantee Savings and Loan Association, Fresno, California, in the names of herself and her daughter, as joint tenants. By exhibits introduced into evidence, it was also established that Soleria subsequently purchased stocks in the names of herself and her daughter, as joint tenants.

The trial judge found, in relevant part: "That bitter litigation between John A. Marklund and Soleria Renee Marklund continued from the time of the filing of the divorce complaint until the date of John A. Marklund's death; that Soleria Renee Marklund, during the lifetime of John A. Marklund, had notice that he did not feel nor intend to be bound by said agreement above referred to; that Soleria Renee Marklund violated the terms of said above quoted agreement during the lifetime of the said John A. Marklund by executing a will disposing of her property contrary to the terms thereof, and further by placing her share of the proceeds of the sale of the said ranch in a savings account standing in the names of herself and Hilma Renee Mitchell, as joint tenants, and subsequently transferring some of her funds into stocks listed in the names of herself and Hilma Renee Mitchell, as joint tenants, without making equal or any provision for her other child; that by reason of her breach of said agreement, said Soleria Renee *Mitchell* had no right to enforce said agreement against John A. Marklund, or his estate, and the same was not binding on him.

"That at the time of her marriage to John A. Marklund, defendant Annie Marklund did not know of the agreement between John A. Marklund and Soleria Renee Marklund, hereinabove mentioned.

"That plaintiffs herein gave no material consideration to either Soleria Renee Marklund or John A. Marklund for the execution of said agreement herein mentioned. Neither did they change their position in reliance thereon. That it would be harsh and inequitable to grant the relief prayed for, and plaintiffs have not proved that to refuse to grant it would be inequitable to them; . . ."

The trial judge concluded "that said agreement . . . was materially breached prior to the death of John A. Marklund and is and was, therefore, unenforceable by her or the plaintiffs herein"; judgment in favor of the defendants was entered accordingly, and this appeal followed.

The appellants do not appear to specify any particular charges of error or errors, nor do they object to any ruling made by the trial court or complain of any misconduct. There is no charge of insufficiency of the evidence and no objection is made to the form or sufficiency of the findings or conclusions, or that such do not support the judgment.

In their opening brief the appellants set forth bald statements of legal principles. (See *Richard* v. *Richard,* 123 Cal. App.2d 900 [267 P.2d 867].) The theory for which they are stated is speculative. We are unable to determine exactly what the plaintiffs' theory is—res judicata? or lack of jurisdiction? ▎ If res judicata, it may not be raised for the first time on appeal. (*Ogier* v. *Pacific Oil & Gas Development Corp.,* 135 Cal.App.2d 776, 781 [288 P.2d 101].) ▎ If lack of jurisdiction, it may be challenged on appeal for the first time. They state, "Plaintiffs are suing to enforce their rights under a final judgment" and argue that the original property settlement was merged in the interlocutory and final decrees of divorce and is not now subject to attack.

▎ To the problem as to whether or not the appellants can change their theory on appeal, where the matter was tried on the basis of their rights being based on the settlement agreement, to the theory that their rights are based on a final judgment, we refer to *Panopulos* v. *Maderis,* 47 Cal.2d 337 [303 P.2d 738], which sets forth the general rule that this cannot be done when the theory newly presented involves disputed questions of fact or mixed questions of law and fact, but there are exceptions where a question of law only is presented on the facts appearing in the record. (See also *Barrera* v. *De La Torre,* 48 Cal.2d 166, 172 [308 P.2d 724]; *Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534].) ▎ The question of whether or not a property settlement agreement is incorporated into a divorce decree so as to merge therein is one of law. (See *Messenger* v. *Messenger,* 46 Cal.2d 619, 626 [297 P.2d 988]; *Biagi* v. *Biagi,* 233 Cal.App.2d 624, 628 [43 Cal.Rptr. 707].) We have therefore considered the newly presented theory of the plaintiffs and find it to be without merit. ▎ The agreement to make wills cannot acquire the status of a judgment by the physical incorporation of the property settlement in which it is embodied into the interlocutory decree of divorce for the reason that it is beyond the power of a court, sitting as a divorce court, to make. ▎ First, no court may compel the making of a will (*Ludwicki* v. *Guerin,* 57 Cal.2d 127, 130 [17 Cal.Rptr. 823,

367 P.2d 415]). ■ Second, the power of the court to dispose of the property of the parties to a divorce action is limited to their community property (*Robinson* v. *Robinson,* 65 Cal.App.2d 118, 119 [150 P.2d 7]).

It is the general rule that the court has no jurisdiction to assign separate property of one spouse to the other (*Fox* v. *Fox,* 18 Cal.2d 645, 646 [117 P.2d 325]), and where it does do so, such matters are not res judicata (*Sonnicksen* v. *Sonnicksen,* 45 Cal.App.2d 46, 58 [113 P.2d 495]); and the court may not declare a homestead on separate property of one spouse in favor of the other (*Miller* v. *Miller,* 227 Cal.App.2d 322 [38 Cal.Rptr. 571]). ■ It does not have jurisdiction to destroy the survivorship aspect of a joint tenancy deed (*Davis* v. *Davis,* 222 Cal.App.2d 691 [35 Cal.Rptr. 281]). ■ The disposition of a husband's estate exceeds the court's power, and California courts have no jurisdiction to fashion a divorce decree which divests a husband of all interest in his land, for the purpose of vesting it in his children when they reach adulthood. (*Farley* v. *Farley,* 227 Cal.App. 2d 1, 7 [38 Cal.Rptr. 357].) Therefore, in this case the divorce court lacked power to order John to make a will disposing of his separate property.

Appellants have also set forth that even if the property settlement agreement had not been merged in the judgment, no rescission has been shown and that the trial court did not so find. However, it did find, on ample evidence, that Soleria materially breached the contract by executing her will and establishing the joint tenancy in the savings account and the stock with her daughter.

We note that the appellants have relied a great deal on the language set forth in *Brown* v. *Superior Court,* 34 Cal.2d 559 [212 P.2d 878], and *Brewer* v. *Simpson,* 53 Cal.2d 567 [2 Cal. Rptr. 609, 349 P.2d 289], the latter case being a subsequent determination of the litigation between the same parties as involved in the former case. It will be noted that the *Brewer* case set forth facts where the wife received the benefits of a reciprocal agreement on the death of the husband and proceeded to do otherwise than as agreed, which does not apply to the facts in the case before us.

The appellants have failed to mention any of the breaches as far as Soleria is concerned, though we think that her breaches were a determinative factor on which the lower court made its decision. ■ As stated in *Notten* v. *Mensing,* 3 Cal.2d 469, 473 [45 P.2d 198], "It is clear that a will,

even a mutual will, is ambulatory until death and hence may be revoked, notwithstanding an agreement not to revoke. [Citations.] However, . . . where there is a valid agreement not to revoke, which agreement is fair and reasonable and adequately supported by consideration, equity will grant a sort of '*quasi*-specific performance' by making the parties who receive the estate constructive trustees for the intended beneficiaries under the revoked mutual will, in accordance with the terms of the contract." (See also *Ludwicki* v. *Guerin, supra,* 57 Cal.2d 127.)

In volume 97, Corpus Juris Secundum, Wills, section 1367, pages 306-307, there is a discussion on agreements to make mutual wills. It is stated: "Moreover, while both or all of the parties to such an agreement are yet alive, any party may recede therefrom, and revoke his will or make a different disposition of his property, on giving proper notice to the other party or parties of his act in so doing, or where such other or others have actual knowledge thereof [fn. Corpus Juris quoted in *Allen* v. *Dillard,* 129 P.2d 813, 820, 15 Wash. 2d 35; 69 C.J. p. 1301 note 74], and provided such other is afforded an ample opportunity to make a new will, and has not changed his position, to his detriment, in reliance on the agreement.

"On the other hand, a revocation or alteration of his will by one of the parties to such an agreement in secret, or without notice to, or the knowledge of, the other or others, although all are yet alive, does not release such party from his obligations under the agreement, and it remains enforceable against him. A breach of such an agreement by one of the parties may, however, be treated by the other party or parties, at their option, as releasing them from their obligations under the agreement.

"*Failure to make a valid will* constitutes a breach of an agreement to execute mutual wills; but if both parties fail to do so, neither can take advantage of the other's failure."

The trial court found that there was a repudiation of the contract by Soleria by the activities in which she engaged after the divorce decree and this was more than sufficient to release her former husband from his obligations under the contract.

As stated in *Sonnicksen* v. *Sonnicksen, supra,* 45 Cal.App.2d 46, at page 57, "Repudiation is a question of fact and intent." And in *Thompson* v. *Boyd,* 217 Cal.App.2d

365, at page 382 [32 Cal.Rptr. 513], the court said: "The question of whether a contract has been cancelled, rescinded, or abandoned is a mixed question of law and fact which is addressed to the trial court."

Civil Code section 1559 states: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

While the court has held in *Sonnicksen* v. *Sonnicksen, supra,* that such third party beneficiaries were entitled to enforce their rights in a suit to quiet title, we think that the rights of such third party beneficiaries are dependent on whether or not the agreement to take care of them is still in force and effect.

"The principles governing rescission of third-party beneficiary contracts are those applicable to the rescission of contracts generally." (*R. J. Cardinal Co.* v. *Ritchie,* 218 Cal.App.2d 124, 149 [32 Cal.Rptr. 545].)

There is no showing whatsoever in the trial of this matter that there was any particular consideration other than mutual promises for the agreement of Soleria and John to make reciprocal wills or that the beneficiaries had any knowledge or changed their position.

In volume 57, American Jurisprudence, Wills, section 706, pages 476-477, it is said: "This is in accord with the general rule which is supported by the weight of authority, but not with entire unanimity, that the parties to a contract entered into for the benefit of a third person may rescind the contract as they see fit, without the assent of the third person, at any time before the contract is accepted, adopted, or acted upon by him, and such rescission deprives the third person of any rights under or because of such contract."

Further, in volume 57, American Jurisprudence, Wills, section 714, at page 484, it is said that there is support for the proposition that a will jointly signed by two testators, or separate wills, executed pursuant to a contract, "can be revoked by the one while the other is living without committing a breach of contract of which equity will take cognizance to require specific performance, provided notice of such revocation is given to the other party or he has acquired knowledge of the revocation in some other manner."

In our case, the court found that Soleria did have notice that John was not going to be bound by the provisions of the will and she proceeded to make a new and different will and put certain property in joint tenancy.

In *Riley* v. *Riley,* 118 Cal.App.2d 11, the court stated at page 15 [256 P.2d 1056] : ''The parties to a contract entered into for the benefit of third persons may rescind or abrogate it without the assent of such third persons at any time before the contract is accepted, adopted or acted upon by such third persons. . . . In 12 American Jurisprudence, at page 843, it is stated :

'' 'According to the weight of authority, the parties to a contract entered into for the benefit of a third person may rescind, vary or abrogate the contract as they see fit, without the assent of the third person, at any time before the contract is accepted, adopted, or acted upon by him, and such rescission deprives the third person of any rights under or because of such contract.' ''

■ Whether or not a property settlement agreement has been abrogated by the parties is a question of fact. (*Rose* v. *Rose,* 175 Cal.App.2d 585, 590 [346 P.2d 460] ; *Tompkins* v. *Tompkins,* 202 Cal.App.2d 55, 59 [20 Cal.Rptr. 530].)

■ The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied December 23, 1965, and appellants' petition for a hearing by the Supreme Court was denied January 19, 1966.