[Civ. No. 15133. First Dist., Div. One. Sept. 15, 1952.]

GRACE E. DOUGLAS, Appellant, v. ELLEN L. WEST-FALL et al., Respondents.

Charles N. Douglas for Appellant.

A. Don Duncan for Respondents.

WOOD (Fred B.), J.—This is an appeal by plaintiff from the judgment rendered, and from an order denying plaintiff's motion for a different judgment on the findings made, in an action by a beneficiary under two express trusts, for an accounting by the respective trustees.

The trial court ordered an accounting and upon the hearing of the accounts and plaintiff's objections thereto, approved some items, disapproved others, and ordered each trustee to surcharge himself in respect to certain other items. Thereafter final accounts conforming to those rulings of the court were filed, approved by the court, and by reference incorporated in the findings of fact.

Respondents claim that the order approving the final accounts was appealable, hence not reviewable upon appeal from the judgment, a point not well taken. This is a suit in equity, not a proceeding in probate. Hence, the provisions of sections 956 and 963 of the Code of Civil Procedure govern. The order under review is not specifically mentioned in section 963. It is not a final judgment in a collateral proceeding. The accounting is the very purpose of this action, not an incidental feature of it. And the order, although it approved the accounts and allowed compensation to the trustees, did not direct the payment of money or the performance of any act by or against the plaintiff. (See *Illinois*

*Trust & Sav. Bank* v. *Pacific Ry. Co.*, 99 Cal. 407 [33 P. 1132], dismissal of an appeal from an order settling a receiver's account, for a discussion of the applicable principles.)

The trustor, Ellen L. Sorgenfrey, created each of these trusts by declarations in writing executed by her in July, 1930. By one of these declarations she conveyed to a daughter, defendant Ellen L. Westfall, as trustee, all of her property except an $8,000 debt secured by mortgage on real property, owed by said trustee to the trustor. By the other declaration, the trustor conveyed this debt and mortgage to a son, defendant John F. Sorgenfrey, as trustee. In most respects the two declarations were alike. In the Westfall trust declaration the trustor recited "in order that I may be relieved from the burden of looking after the properties which I now have and the properties which I will acquire from the estate of my deceased daughter . . . I make this declaration of trust conveying . . . to . . . [the designated trustee] to manage exclusively during my lifetime and to dispose of said property in the way I herein direct after my death. . . ." She gave each trustee, respectively, power "to hold, manage, sell, invest and purchase, in the sole discretion of the said . . . [the designated trustee] and to distribute upon my death the said properties in accordance with this instrument . . ." In the Westfall trust she directed that upon her death the property "be distributed as hereinafter directed, to wit: (1) I direct that my said trustee hereinabove named shall pay out of my said trust estate all of my just debts and the expenses of my funeral and burial as soon after my death as may be practicable." Concerning her beneficiaries, in each of the trust declarations, she said " [u]pon my death I direct my trustee to promptly distribute, transfer and convey, after paying the above expenses of administration, all of the trust estate property held by her [him] as follows, to wit:" in various amounts and proportions to her seven children, including plaintiff and defendants Ellen L. Westfall and John F. Sorgenfrey. The trustor died August 26, 1933.

■ Among the items of expenditure claimed by trustee Westfall and approved by the court were payments of $75 per month for "board, lodging, care and nursing of Ellen L. Sorgenfrey," the trustor, and various small items described as "sundry expenses" or "sundry extras" for her, all of such payments aggregating nearly $3,000 between July, 1930, and August, 1933. Plaintiff claims that the trustee was wholly without authority to make any such payments, a claim

predicated principally upon the fact that the declaration of trust did not expressly authorize the making of any distribution until after the death of the trustor. This is too literal and narrow an interpretation. The failure expressly to provide for distribution of income during the life of the trustor suggests oversight and inadvertence rather than a calculated purposeful intent to require accumulation of the income during that period and the distribution thereof among her children after her death. The declaration that she made this trust that she might "be relieved from the burden of looking after the properties" bespeaks a desire to be relieved of the burden of management, not to strip herself of the benefit of the income accruing from those properties. We can only infer that the trustor intended immediately to vest legal title and possession in Westfall with the duty and power of managing the properties for the benefit of the trustor during her lifetime, then to pay her debts and funeral and burial expenses and distribute the remainder to the trustor's children. Upon principle, it is quite like the case of *Nichols* v. *Emery*, 109 Cal. 323 [41 P. 1089, 50 Am.St.Rep. 43], where the court inferred an intent to retain a life estate and to postpone the enjoyment of the corpus during the period of that estate. In our case, we infer an intent to retain a beneficial interest in the income during the life of the trustor.

It follows that these payments for the care of the trustor, up to the amount of the income, represented moneys which belonged to the trustor and in which plaintiff had no interest. The amount of the excess of debts over income, if not paid during the trustor's lifetime, would upon her death constitute debts which she had expressly directed the trustee to pay. No purpose would be served in sending the case back to have the accounts revised to reflect payment of that excess after the trustor's death instead of before. Indeed, there is some basis for an inference from the declaration of trust that the trustor intended the trustee to pay these debts as they accrued.

Plaintiff also claims that the court erroneously allowed each trustee, and the attorney for each, certain fees. The court allowed each trustee $500 as fees for the performance of various services including administering the trust and defending the action of *King* v. *Westfall*, an action brought against both trustees in 1934 by some of the beneficiaries. For similar services the court allowed the attorney for trustee

Westfall $500 and the attorney for trustee Sorgenfrey $200 and $2.50 costs. No fees, to trustee or attorney, were allowed for services in the present action. Each declaration of trust expressly allowed fees to the trustee and his attorney. This clause of each trust read as follows: "my said trustee shall be entitled to reasonable compensation for acting as trustee under this trust, said compensation not to exceed five per cent (5%) per annum of the gross income from said trust property, except that in case of litigation said trustee is to be entitled to an additional fee. Said trustee is also to be entitled to reasonable compensation for her [his] attorney as such trustee for performing all necessary legal services in connection with said trust property, including any litigation which may arise." We cannot say as a matter of law that any of the fees mentioned were excessive. Plaintiff, having furnished only a clerk's transcript, has not brought up the record of the evidence upon which these allowances were based indicating the reasonable value of the services involved. (See *Utz* v. *Aureguy,* 109 Cal.App.2d 803, 806-807 [241 P.2d 639], and *Palpar, Inc.* v. *Thayer,* 83 Cal.App.2d 809, 811 [189 P.2d 752].) Since we do not know how much of the $500 allowed each trustee was for litigation, we do not know and do not infer that the portion thereof awarded for other services exceeded the 5 per cent limit.

Plaintiff contends that in certain instances where the court surcharged a trustee with interest, it did so at an insufficient rate, plaintiff claiming in most instances the rates should have been 7 per cent compounded annually. Upon payment in 1943 of the principal of a $1,000 note of Charles M. Sorgenfrey, Westfall waived delinquent interest which had accrued since December 6, 1937. The court ordered the trustee surcharged with the amount of this delinquent interest computed at 6 per cent, the rate specified in the note. There were two notes of $2,900 each of John F. Sorgenfrey bearing interest at 6 per cent compounded when delinquent. These notes were renewed in 1940 without interest and trustee Westfall waived delinquent interest. The court surcharged the trustee with amount of the principal and delinquent interest, 6 per cent compounded to the date of renewal, and thereafter simple interest, at 6 per cent, to August 18, 1948, when the trustee cancelled the notes as paid. There was a $500 note of Anna LiCavoli bearing interest at 6 per cent. Anna died in 1931 and the note was never paid. The court surcharged Westfall with the principal and interest at 6

per cent compounded until the four-year statute of limitations had run and thereafter simple interest until March 14, 1950, when the trustee's account was filed. The court disapproved four loans by Westfall to George W. Dutton and W. D. Calkins and charged the trustee with the principal amounts thereof and current savings bank interest compounded semiannually from the respective dates of the loans to the filing of the trustee's account, based upon the rates paid by Wells Fargo Bank & Union Trust Company where the trustee kept one of her accounts. Trustee Sorgenfrey approved in 1940 a renewal of the $8,000 note of Westfall without interest and waived interest on the first note. The court ordered Sorgenfrey charged with the amount of the principal as being paid on August 18, 1948, and also charged him with interest at 6 per cent compounded annually on the first note to the date of the second and at 6 per cent simple interest thereafter until August 18, 1948. Plaintiff contends that in these matters the trial court attempted to waive interest after August 18, 1948, and as to the rate should have surcharged the trustees with interest at 7 per cent compounded annually.

We have found no statute applicable. Section 2262 of the Civil Code applies only when a trustee ''omits to invest the trust moneys according to the last section [section 2261].'' Section 2261 at the time of the enactment of 2262 required a trustee to invest money as fast as he collected a sufficient amount. We are not here concerned with a failure to invest or with delays in making investments. ■ We find the applicable principles well expressed in *Wheeler* v. *Bolton*, 92 Cal. 159, at 172 [28 P. 558]: ''The general rule applicable to an executor, as well as to any other trustee, is, that, except in cases in which he has been guilty of some positive misconduct or willful violation of duty, he is not to be charged with compound interest. In cases of mere negligence, no more than simple interest is ever added to the loss or damage resulting therefrom. In cases where he has mingled moneys belonging to his trust with his own funds, and used them for his own advantage, courts have charged him with compound interest, upon the theory that in the absence of evidence to the contrary, he will be presumed to have received such profits from their use. [Citation.] This rule is of modern growth, and is applied more frequently in this country than in England. It has been adopted, 'not for punishing the delinquent trustee, but for the purpose of attaining the

actual or presumed gains, and to make certain that nothing of profit or advantage remains to the trustee, except, perhaps, his commission or compensation.' [Citations.] But even in such case, if the executor can show that he has acted in good faith, and has not made any greater profit by the use of the funds, he will be charged only simple interest. (*Perkins' Estate* v. *Hollister*, 59 Vt. 348 [7 A. 605].) The rule charging him with interest is, however, limited to cases in which it is either shown or presumed that the executor has himself profited by his acts, or has been guilty of such willful misfeasance as to justify the court in requiring from him compensation therefor.

"Whether in any instance the executor is chargeable with even simple interest must be determined by the trial court from all the circumstances of that case. It cannot be said as matter of law that interest is to be added to the value of the property that has been lost by his neglect. The circumstances connected with its loss may so completely exonerate him from any charge of neglect that he would not be held liable for even its value, and his neglect may have been so technical that the court would not feel justified in requiring from him more than a restoration of the value of the property; and it has been held that the heir himself may have been so negligent in prosecuting his claim that the court would consider that the executor should not be charged with interest." (See, also, *Estate of Cousins*, 111 Cal. 441, 451-452 [44 P. 182], and *Katz* v. *Enos*, 68 Cal. App.2d 266, 278-279 [156 P.2d 461].) In the light of these principles and the trial court's findings that there was no commingling of assets and that each trustee acted in good faith, we cannot say as a matter of law that the interest and rates of interest surcharged by the trial court in the instant case were erroneous or that in imposing them the court committed an abuse of discretion. Nor can it be said as a matter of law that the trial court abused its discretion in terminating the 6 per cent interest on the Westfall and Sorgenfrey notes as of August 18, 1948, the date as of which the respective trustees were charged with receipt of the principal.

Plaintiff assigns as error the failure of the court to make findings in respect to the several contested items of the accounts, citing *Whann* v. *Doell*, 192 Cal. 680 [221 P. 899]. In that case a trial was had without reference to a master or referee and without an interlocutory decree ordering an

accounting. In such a case, the court observed, a mere statement of the balance due in the findings of the court was not a proper disposition of the action. ■ But the court in that case also said: "On the other hand, the contention that an account must be stated in accepted bookkeeping fashion cannot be maintained. The question presented by such an appeal is a practical one in such cases, particularly in view of our restricted powers under the constitution (art. VI, § 4½), namely, can this court upon the whole record say that there has been a miscarriage of justice in the trial court? Any procedure or record from which it can be intelligently ascertained what the issues were as to the controverted items and how these issues were disposed of by the trial court will suffice for the purpose, whether the matter appears from the findings, the decree or a bill of exceptions, showing the controversy, and the disposition thereof. It may be possible, also, to show such action by a typewritten record prepared under section 953a et seq. of the Code of Civil Procedure." (192 Cal. at 684, quoted with approval in *Sears* v. *Rule,* 27 Cal.2d 131, 149 [163 P.2d 443], and *Davis* v. *California Motors,* 73 Cal.App.2d 241, 246-247 [166 P.2d 52]. See, also, *Rochat* v. *Gee,* 137 Cal. 497, 501-502 [70 P. 478], settlement of the account of a receiver, and *Estate of Tretheway,* 32 Cal.App.2d 287, 293 [89 P.2d 679], settlement of an executor's account.) The record in our case complies with these requirements. An accounting was ordered. Accounts were rendered. Objections thereto were filed and heard. The accounts were revised in accordance with the rulings of the court, and were thereafter approved by the court. The accounts were then incorporated by reference into the findings of fact. With or without such incorporation by reference, we think this method of proceeding adequately and appropriately preserved a record of the items of the account in issue between the parties and the decisions of the court thereon.

■ Finally, plaintiff claims error in the failure of the trial court to award her reimbursement for attorney fees reasonably incurred in pursuing and preserving the trust property. But she makes no claim or showing that she made such a request of the trial court. It is too late now for her to claim it.

For the foregoing reasons the judgment should be affirmed.

Plaintiff also appeals from what she calls an order denying a "motion for judgment in her favor on the findings." It is not clear from the record that such a motion was made or denied. ■ However, an order denying a motion, made under

Code of Civil Procedure, section 663 and section 663a, to vacate and set aside a judgment and enter a different judgment, is an appealable order. We will consider this appeal as including an appeal from such an order. We are convinced, after a careful review of the record and the conclusions reached after a consideration of the appeal from the judgment, that the trial court did not err in denying the motion. The order should be affirmed.

The judgment and the order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 15, 1952, and appellant's petition for a hearing by the Supreme Court was denied November 13, 1952.