[Civ. No. 16023. First Dist., Div. One. Sept. 13, 1954.]

SIMPLICIO IACOVITTI et al., Appellants, v. GENE
FARDIN et al., Respondents.

Josephine Lyons Kovacevich for Appellants.

Cosgrove, Molinari & Tinney, Charles P. Molinari and Thomas B. Gallen for Respondents.

PETERS, P. J.—This action for a mandatory injunction was brought by the Iacovittis against the Fardins to compel the latter to remove that portion of a building alleged to have been intentionally constructed by the Fardins so as to encroach on the Iacovittis' property. The key question presented related to the location of the correct common boundary between the properties of the two litigants. The surveyors produced by each side differed as to where that common boundary should be located, the Fardins' surveyor testifying that there was no encroachment at all, the Iacovittis' surveyor testifying that the offending building encroached on the Iacovittis' property some 8½ inches. On this conflicting evidence the trial court found that the Iacovittis had failed to prove that the building in question encroached on their property, and that if such encroachment existed it had not been constructed deliberately or intentionally by the Fardins so as to encroach on the adjoining property. The Iacovittis appeal from the judgment denying them relief, and from the order denying their motions to amend the conclusions, to vacate the judgment, and to enter judgment in their favor.

The appeals present nothing more than a factual question on which the evidence is conflicting. That being so, the judgment and order appealed from must be affirmed.

 The properties in question are located on 29th Street, between Church and Dolores Streets in San Francisco, and are part of Horner's Addition, Block No. 54. The following diagram, not drawn to scale, will serve to illustrate the relative positions of the properties and some of the pertinent measurements:

The appellants own lot numbered 14, which is unimproved. The respondents own lot numbered 14B, on which flats have been constructed. It is appellants' theory that these flats and their fence in the rear encroach on appellants' property to the extent of 8½ inches along the entire dividing line between the two properties, that is, for a depth of 114 feet.

In order to understand the claims of the disputants a brief reference to the history of the properties must be made. Originally the four lots shown on the diagram were owned as one parcel by the Southern Pacific Company. This parcel

was a part of a right-of-way owned by that company. On March 9, 1943, the Southern Pacific Company divided this portion of the right-of-way into two lots, and granted one to Steele and the other to Schafer. The Steele grant included lots later numbered on the diagram 15A and 14A, while the Schafer grant included the lots later numbered 14B and 14. The description in the Steele grant starts with a point on the northerly line of 29th Street "245.61 feet Easterly from the Easterly line of Church Street," runs 114 feet north, then westerly 50.47 feet "more or less" to the westerly line of the Southern Pacific property, thence southerly along the line of the Southern Pacific property to 29th Street, then easterly for "50.03 feet, more or less," to the point of beginning. Thus, the property granted to Steele was not precisely rectangular because the parcel owned by the Southern Pacific Company was not precisely rectangular, the side boundaries not being precisely at right angles to the end boundaries.

The other half of the Southern Pacific right-of-way was granted by that company on the same day, March 9, 1943, to Schafer. The drafter of this deed did not start the description of the Schafer grant 245.61 feet from Church Street, but started at a point on the north line of 29th Street "314.39 feet Westerly from the Westerly line of Dolores Street," and then described roughly a rectangle with a rear measurement of 49.57 feet, "more or less," and a frontage on 29th Street of "50.03 feet, more or less." The easterly boundary of the Schafer grant is described as the "Easterly line of the property of Southern Pacific Railroad Company." Thus, according to the Southern Pacific Company deeds, the full block between the designated starting points on Church and Dolores Streets has a frontage on 29th Street of 560 feet, that being the total of 314.39 feet and 245.61 feet, the distances set forth in the deeds. It is equally clear that the Steele and Schafer grants disclose an intent on the part of the Southern Pacific Company to divide the property into two portions, each with a frontage of 50.03 feet "more or less" on 29th Street, and with a common boundary described in the Steele grant as 245.61 feet easterly from Church Street, and in the Schafer grant as 314.39 feet westerly from Dolores Street.

Steele and Schafer each divided their respective parcels, then unimproved, into two lots, the Steele grant becoming Lots 15A and 14A, and the Schafer grant becoming Lots 14B and 14. The Iacovittis acquired the most easterly lot from Schafer, that is, Lot 14, by a deed dated December 1, 1949.

The deed describes the property as having a frontage on 29th Street of "25.03 feet, more or less" running easterly from a point 289.39 feet westerly from the west line of Dolores Street.

The Hollises acquired the most westerly lot from Steele, that is, lot 15A.* This lot is described as having a frontage on 29th Street of "25 feet, more or less" running westerly from a point 220.58 feet from the easterly line of Church Street.

The Fardins, by deeds dated March 2, 1950, acquired Lot 14B from Schafer, and Lot 14A from Steele. Lot 14B (the lot adjoining the Iacovittis' lot) is described as commencing at a point on 29th Street "289.39 feet westerly from the westerly line of Dolores Street," and as having a frontage on 29th Street of "25 feet" westerly from such point. There the frontage meets the frontage of Lot 14A purchased from Steele the same day. Lot 14A is described as having a frontage of "25.03 feet" on 29th Street running westerly from a point 314.39 feet west of Dolores Street to a point 220.58 feet east of the easterly line of Church Street.

The Hollises started to construct a building on Lot 15A. A doubt arose as to whether this building encroached on Lot 14A, then owned by the Fardins. It should be noted that the common boundary between these two lots, designated XY on the diagram, is approximately 50 feet from the common boundary between lots 14B and 14, designated AB on the diagram. In April of 1950, because of the doubt that had arisen, or because of a mistake of the original surveyors there may have been an 8 or 9-inch unaccounted excess in the entire block, the Fardins conveyed to the Hollises a rectangular strip of land 8⅜ inches by 114 feet along the boundary designated as XY, deducting the 8⅜ inches from the frontage of Lot 14A and adding that amount to the Hollises' lot, numbered 15A. It is appellants' theory that this, in effect, started a chain reaction so that when the Fardins built on Lots 14A and 14B, utilizing the full frontages of such lots as described in their original deeds, the building constructed

---

*The Steele-Hollis deed was not produced at the trial, but a declaration of homestead by the Hollises was presented for identification. This declaration of homestead contained a description of the property. This description was read into evidence, the parties stipulating that the description was the same as that contained in the deed. The appellants claim that the trial court committed error in refusing to admit the declaration of homestead into evidence. Inasmuch as the only importance of the declaration was its description of the property, and such description was accepted by stipulation, it was not error to exclude the document.

on Lot 14B encroached some 8½ inches onto the Lot 14 owned by appellants.

Almost immediately after the Hollises started construction the Fardins constructed a set of flats on each of their lots, that is, on Lots 14A and 14B. In the fall of 1950 the Fardins sold Lot 14A, with its newly-finished flats, to Faulkner. The Fardins-Faulkner deed purports to convey a lot with a frontage of "25.03 feet" on 29th Street, and contains a description identical with the description to be found in the deed from Steele to the Fardins. In other words, the Fardins-Faulkner deed ignored the fact that the frontage of Lot 14A had been reduced by the grant from the Fardins to the Hollises of the 8⅜-inch strip. So far as the record is concerned, the Fardins thus deeded this 8⅜-inch strip first to the Hollises, and then included it in their deed to Faulkner. But neither the Hollises nor Faulkner is complaining, nor is either a party to this action. It is the theory of appellant, however, that the frontage of Lot 14A instead of being 25.03 feet, was 8⅜ inches less; that the building on Lot 14A has a frontage of 25 feet 1¾ inches, and therefore overlapped onto Lot 14B, some 8 inches, that the building on Lot 14B is 24 feet 10 inches wide, so that it must encroach on appellants' lot 14 some 6 to 8 inches. Appellants testified that they discovered this encroachment in July of 1951 when they had their lot surveyed.

The surveyor produced by appellants testified that respondents' building does encroach over 8 inches on appellants' lot. It will be remembered that in the deed to appellants' lot the frontage on 29th Street is fixed at "25.03 feet, more or less." The surveyor testified that, according to his survey and calculations, the precise frontage actually conveyed was 25.81 feet or 25 feet 9¾ inches, which is some 9 inches more than 25.03 feet "more or less" mentioned in the deed. The surveyor also testified that appellants' lot with the claimed encroachment still has a frontage available for building of 25.10 feet, which is .07 of a foot in excess of the 25.03 feet mentioned in the deed. The surveyor admitted that his calculations were predicated on the metes and bounds descriptions in the appellants' and respondents' deeds and disregarded the Southern Pacific deeds and the intent on the part of that company as disclosed by those deeds to divide the original area into two equal grants to Steele and Schafer; that if such intent were considered a different result might follow; that it was not a matter of surveying but of interpret-

ing the deeds; that, according to his interpretation, there was an 8-inch overlap, but that according to the interpretation of respondents' surveyor there was no overlap. This surveyor also testified that there was no surveyor's mark on either Dolores or Church Streets from which to start the measurements, and that he had started all of his measurements from a surveyor's mark 173 feet west of Church Street made by the city in 1906. There was, according to this witness, no starting point near Dolores Street.

Respondents' evidence contradicts that of appellants. One of appellants' theories is predicated on the premise that because respondents gave a deed to the Hollises for the 8⅜-inch strip, the Hollises' building must have encroached that much on Lot 14A, which automatically caused a series of overlaps, resulting in the encroachment on appellants' property. There is not only no evidence to show that the Hollises' building does encroach on Lot 14A, but the evidence affirmatively indicates that the Hollises' building does not encroach at all on Lot 14A, that is, that it is not constructed on any portion of the 8⅜-inch strip conveyed to the Hollises by the Fardins. Appellants' surveyor admitted that the west wall of the Hollises' dwelling is on the west boundary line of Lot 15A. The Hollises' dwelling is admittedly 24 feet 10¼ inches wide. The Hollises' deed describes a frontage of ''25 feet, more or less,'' so that the Hollises' building did not encroach on Lot 14A, and the transfer to the Hollises of the 8⅜-inch strip was not necessary, and the strip was not covered by the building. Thus, the chain reaction claimed by appellants never got started.

This conclusion was corroborated by the testimony of the surveyor produced by respondents. This surveyor had surveyed respondents' lots before the Fardins started construction. In the course of that survey the surveyor had placed survey marks on the curb on 29th Street in front of the lots to mark the lateral boundaries of the lots. Admittedly, the buildings on Lots 14A and 14B are built within the boundaries thus fixed by the surveyor. If those marks correctly depict the true boundary between appellants' and respondents' land (line AB) then there was no encroachment on appellants' lot. The surveyor testified that he made these marks after first locating the eastern line of the Southern Pacific right-of-way which was the eastern boundary of appellants' lot. He located this boundary by measuring from a surveyor's mark on a building near the intersection of

Dolores and 29th Streets. Thus, he started from Dolores Street, fixed the eastern boundary of the Southern Pacific right-of-way and thus located the crucial AB boundary line. Appellants' surveyor had located this boundary by measurements from a mark west of Church Street. In other words, appellants' surveyor did not locate the AB boundary as 289.39 feet west of Dolores Street, as called for in the deeds, but as a certain calculated distance from a surveyor's mark west of Church Street. If the starting point used by respondents' surveyor is correct the marks he placed on the curb are correct and respondents' building does not encroach on appellants' land, because the flats on respondents' land are admittedly well within the curb markings. On this testimony the trial court could and did find that there was no encroachment.

In thus electing to approve testimony of respondents' surveyor and in refusing to find in accordance with the testimony of appellants' surveyor the trial court was performing a trial court function, that is, was passing on a conflict in the opinion evidence between the two experts. The trial court was required to determine where the boundary between appellants' and respondents' lots was located. That line was stated to be 289.39 feet west of the westerly line of Dolores Street by the deeds. The trial court determined that respondents' surveyor accurately fixed that line, and that such survey was more accurate than that made by appellants' surveyor. In making that determination the trial court was entitled to consider the fact that respondents' survey was made in February of 1950 prior to any construction on respondents' lots and long prior to the commencement of this litigation. The trial court also undoubtedly took into consideration the fact that respondents' measurements were oriented to the Dolores Street end of the block as called for in the metes and bounds description in the deeds, while those of appellants were based on measurements from the Church Street end of the block. The trial court was also entitled to consider the fact that appellants' surveyor considered only the metes and bounds description in the deeds of the present holders of the lots and ignored the original Southern Pacific Company deeds to Steele and Schafer. Those deeds gave each grantee a frontage on 29th Street of 50.03 feet. But, according to appellants' survey, the Schafer grant had 9 inches more frontage than the Steele grant—a result obviously contrary to the proper interpretation of the Southern Pacific

Company deeds. The trial court was also entitled to consider that the metes and bounds description in appellants' deed provides for a frontage of 25.03 feet "more or less"; that according to respondents' surveyor appellants have more than that (about 25 feet 2 inches) on which to build, but appellants' surveyor would give them an additional 8 inches. Under such circumstances the challenged findings are amply supported.

Appellants complain about the failure of the trial court in its judgment to quiet their title to Lot 14 as described in their deed. Such a determination was not required. At no time during the trial was any issue presented as to the ownership of the property described in appellants' deed, nor was there any issue as to the description found in that deed. The trial court found that appellants owned the land described in their complaint, but, inasmuch as the ownership of neither Lot 14 nor Lot 14B was in issue, there was no legal compulsion to carry such finding into the judgment. The key question had nothing to do with ownership of land, but had to do with locating on the surface of the land the dividing line, AB.

Appellants also object to the finding that if there was an encroachment it was not an intentional one. This finding was, of course, unnecessary and superfluous. Once the court determined that there had been no encroachment, the question of whether such encroachment, had it existed, was or was not intentional, was no longer in the case.

Appellants also appeal from the order denying their motions to amend the conclusions of law, to vacate the judgment, and to enter another and different judgment. Such order, contrary to respondents' contentions, is appealable as a special order made after final judgment. (Code Civ. Proc., § 663a; *Socol* v. *King,* 34 Cal.2d 292 [209 P.2d 577]; *Douglas* v. *Westfall,* 113 Cal.App.2d 107 [248 P.2d 68]; 3 Cal.Jur.2d p. 488, § 56.) There is, however, no merit in the appeal from the order denying the motions. Once it is determined that the trial court's findings of no encroachment is supported, the conclusions and judgment entered were proper.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 13, 1954, and appellants' petition for a hearing by the Supreme Court was denied November 10, 1954.